Albert Brown *v.* State.

[55 South: 961.]

1. Criminal Law. *Hearsay evidence. Admissions by third persons.*

Testimony going to show confessions and admissions on the part of
third persons made out of court is not admissible in exculpation of
those on trial for crime.

2. Exclusion of Testimony. *Reversible error.*

Where on the trial of a party for murder the court excluded the fol-
lowing question, addressed on cross-examination to one of the two
eye witnesses of the tragedy and brother to the deceased; "Wasn't
there a crowd of men there, B. H. and several others, that Mr.
McN. got togther, there and told them they would have to hold the
inquest and you were right there, and they couldn't get any testi-

mony about who did the shooting, and found that he came to his death by an unknown hand?" *Held,* that the exclusion of this question was not reversible error.

Appeal from the circuit court of Lee county.

Hon. Jno. H. Mitchell, Judge.

Albert Brown was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*Clayton, Mitchell & Clayton, Boggan & Leake* and *C. P. Long,* for appellant.

It was error for the court to exclude the testimony of O. T. Trapp, sheriff, and Norbin Jones, chancery clerk of Lee county, to whom Henry Brown had confessed that he was the guilty party and not the appellant. The confession and the testimony of the sheriff is in the record, but was not given in the presence of the jury. It shows that Henry Brown had seen his brother suffer for his wrong as long as he could, and that he voluntarily came to the sheriff and gave himself up as the true culprit. He stated at the time that the appellant was innocent and was not even present at the time of the killing.

The testimony in this case, we submit points equally to the guilt of Henry Brown as to that of the appellant, and this fact makes the action of the court in excluding this testimony grave error, with all the testimony indicating the guilt of Henry Brown to a great extent, then for the court to refuse to permit the appellant to prove to the jury that Henry had not only confessed that he was the guilty party, but had spent several months in jail awaiting the indictment by a grand jury and a conviction by a petit jury, and a death upon the gallows, or a felon's cell in the penitentiary; we submit to refuse this to the defendant as denying him a fair and an impartial trial.

If in this case, the testimony offered was incompetent, then, if Henry Brown had been tried and convicted of

this offense and had been sentenced to death, and while on the gallows had made a confession, and admitted his guilt and completely exonerated the appellant in the matter, then it would have been incompetent for the defense to have proven this confession made under such circumstances, in a trial for his own life on the same charge. This would shock the feelings of a barbarian. Such procedure would not be tolerated even in Italy in the trial of the Camorrat.

Yet some American courts have held this kind of testimony incompetent. But when the cases are carefully considered, it will be found, in almost all of them, that the presence of the party making the confession was unaccounted for. This will be found to be true in the following cases in which the confession was excluded, to-wit: *Welsh* v. *State* (Ala.), 11 So. Rep. 560; *Lowery* v. *State* (Ga.), 28 S. E. 419; *State* v. *Young* (La.), 31 So. Rep. 993; *Farrell* v. *Watz* (Mass.), 35 N. E. 783; *Smith* v. *State,* 9 Ala. 995.

In the last case cited, Mr. Justice Goldwaite delivered a dissenting opinion in which he said, ''When the other facts and circumstances connect the party with the act, and the confession is made under circumstances which repel the suspicion of any motive, I can see no reason why a doubtful crime may not thus be fixed on the confessing party, though the fact of that confession may tend to exculpate another, to whom the circumstances equally point as the guilty person.'' *Smith* v. *State,* 9 Ala. 995.

This case is very much like the case at bar, in that the circumstances point to the guilt of either party equally.

In the case of *Coleman* v. *Frazier,* 4 Rich. L. 152, Oneal Justice, said: ''The admission of such testimony arises from necessity, and the certainty that it is true from the want of motive to falsify. . . . Here we have every guaranty of its truthfulness, the grave consequences of

infamy, and at the least ten years' imprisonment would certainly insure the truth of the speaker.''

This is the true reason given for this exception to the hearsay rule. It is a statement made against the interest of the party making the confession, and Mr. Wigmore in his second volume on evidence, demonstrates that there should be no difference in receiving such confessions when it would subject the party to a criminal presecution, than when the admission would affect his property rights. Wigmore's Evidence, vol. 2, section 1476.

Here also will be found a history of this exception to the hearsay rule, and it will be noted that until 1844 in England, such confessions were always admitted. And that this doctrine was not changed until a case was tried in the House of Lords, which Mr. Wigmore says was not well argued or considered by the judges, and in which ''a backward step was taken and an arbitrary limit put upon the rule.'' It was there held to apply only to statements made against the property interest of the party making it. This case has been followed by some of the courts and without reason as Mr. Wigmore clearly shows.

The case of *Martin* v. *State*, 26 S. W. Rep. 400 (Tex.), refused to follow this precedent and admitted the confession.

It is true that there are not many cases in which this point has been decided because it is seldom that such facts exist in a case. It is a question of first impression in this court.

*Geo. T. Mitchell,* for appellee.

While there are five assignments of error in the record, counsel, in their brief, have practically abandoned all of same except the third assignment of error, which is as follows:

"Because the court erred in excluding the testimony of O. T. Trapp and Norbin Jones, witnesses for the defendant, offered to prove the confession of Henry Brown, as shown by stenographer's notes." The proffered testimony as shown by the record was to the effect that Henry Brown, after the trial of the case in the justice of the peace court, after the *habeas corpus* trial before the chancellor, after one trial of the case in the circuit court, after the second trial of the case in the circuit court, and after an appeal to this court from the conviction of the lower court, came to the sheriff of the county, and surrendered himself, claiming that he, and not his brother, Albert, did the killing. Whereupon the sheriff confined him in jail, and kept him there until the next grand jury of the county convened, who investigated the matter, and placed so little credence in, and attached so little importance to the so called confession of Henry Brown, that they absolutely paid no attention to it and refused to indict him upon his own confession. He was thereupon released from custody by the sheriff and remained in the county until a short time before the next term of court, when, it seems, after all danger was over, and there was no prosecution against him, and no threatened prosecution, he decided to seek safety in the "tall and uncut timber." On the trial of the case in the court below defendant offered this testimony as going to show that Henry Brown and not Albert did the killing. The court, as we contend, very properly excluded the testimony on the ground that it was hearsay, and it is upon this point that appellant asks this court to grant him a new trial.

Practically the only authority submitted by counsel for appellant in support of their contention that this testimony was competent and should have gone to the jury is 2 Wigmore on Evidence, pars. 1476 and 1477, in which the learned author states that the great weight of authority is against the admissibility of such evi-

dence, but that, in his opinion, it should be competent. In this position, he stands practically alone, and his views upon this question run counter to the unanimous holding of the courts of this country and also of England. 12 Cyc. 399, par. n., uses the following language:

"The cases are not harmonious as to the relevancy of evidence incriminating outsiders in the crime with which the accused stands charged. It has been held that he may show that another actually committed the crime, if the evidence incriminating the other is inconsistent with his own guilt, but it is not admissible to show that another person is or was suspected, or has been indicted for the crime." *Brown* v. *State,* 120 Ala. 342; *Peoples* v. *Thompson,* 33 N. Y. (App. Div.) 177; *Ray* v. *State,* 10 Yerg. (Tenn.) 258; *Greenfield* v. *People,* 85 N. Y. 75; *Johnson* v. *State,* 43 S. W. 1007; *Taylor* v. *Com.,* 90 Va. 109.

The flight by the third person, his motive to commit the crime, his bad character, or even his confession of the crime, is irrelevant to exculpate the accused." *Levison* v. *State,* 54 Ala. 520; *State* v. *Taylor,* 136 Mo. 66; *Bennett* v. *State,* 56 Ala. 370; *State* v. *Yandle,* 166 Mo. 589.

In the same volume, 12 Cyc., at p. 434, par. 1, we find:

"The declarations of a person other than the accused, confessing that he committed the crime, are not competent for the accused, for although the latter may exculpate himself by proving, if he can, that some one with whom he was not connected, committed the crime with which he is charged, he cannot do so by hearsay; and this rule is not changed by the fact that the declarant is dead, or even by the fact that he confessed on his death bed." *Welch* v. *State,* 96 Ala. 92; *Owensby* v. *State,* 82 Ala. 63; *Alston* v. *State,* 63 Ala. 178; *Snow* v. *State,* 58 Ala. 372; *Snow* v. *State,* 54 Ala. 138; *Wolfolk* v. *State,* 85 Ga. 69; *Moughon* v. *State,* 57 Ga. 102; *State* v. *Smith,* 36 Kan. 618; *State* v. *West,* 45 La. 928; *State*

*v. Hack*, 118 Mo. 92; *State* v. *Duncan*, 116 Mo. 288; *State* v. *Evans*, 55 Mo. 460; *State* v. *Levy*, 90 Mo. 643; *Peoples* v. *Schooley*, 149 N. Y. 99; *Greenfield* v. *People*, 85 N. Y. 75; *People* v. *Greenfield*, 23 Hun, 454; *State* v. *Gee*, 92 N. C. 756; *State* v. *Beverly*, 88 N. C. 632; *State* v. *Baxter*, 82 N. C. 602; *State* v. *White*, 68 N. C. 158; *State* v. *Duncan*, 28 N. C. 236; *State* v. *Fletcher*, 24 Or. 295; *Peck* v. *State*, 86 Tenn. 259; *Holt* v. *State*, 9 Tex. App. 571; *Horton* v. *State*, 24 S. W. 28; *U. S.* v. *McMayon*, 4 Cranch C. C. 573; *U. S.* v. *Miller*, 4 Cranch C. C. 104; 14 Cen. Digest, par. 981; *West* v. *State*, 76 Ala. 98; *Davis* v. *Com.*, 95 Ky. 19.

"Evidence by a witness that a third person told him that he committed the crime is incompetent as hearsay." *Com.* v. *Chabbock*, 1 Mass. 144.

In 16 Cyc. 1199, par. b., we find the following:

"Confessions or criminal admissions by a third person are irrelevant on the issue as to whether the party on trial committed the crime to which such confessions or admissions refer, in the absence of conspiracy, or other established relation of agency; and the same rule applies to statements or other acts of the third person which tend to establish circumstantially the guilt of the latter."

Under the above text I desire to refer the court to the long list of authorities cited thereunder, from almost every state in the Union, and also from the United States Court.

Mr. Wigmore himself concedes that his views are contrary to the great weight of authority, not only in this country, but in England. He seeks to have this rule which has been so firmly established for all these years, and which is so wholesome in its application, changed and over-turned by reason of the fact that it might in some particular case work a hardship, and therefore he denounces it as barbarous.

McWillie, Special Judge, delivered the opinion of the court.

The appellant was indicted for the murder of Alonzo Addison, and, his previous conviction for manslaughter having been reversed (54 South. 305), he was again tried and convicted of the same offense, and from this second conviction the present appeal is prosecuted.

On the second trial the defense offered to prove that Henry Brown, a brother of the accused, who had never been indicted, stated to the sheriff and chancery clerk of the county that his brother had suffered long enough about the matter, that he was the man who slew the deceased, and that his brother was not present and had nothing to do with it in any way; that in pursuance of this confession he was taken in custody by the sheriff and held a prisoner in the county jail for several months; that his confession and incarceration took place during the pendency of the former appeal herein; that before the reversal of judgment on that appeal, the grand jury having investigated the matter and failed to find an indictment against him, Henry Brown was discharged from custody and was absent without the procurement of the accused and his counsel, and his whereabouts were unknown to him and them, process for him as a witness for the accused having been returned "not found." On the objection of the state the court refused to admit the evidence, and its action in so doing is assigned for error.

It is well settled that testimony going to show confessions and admissions on the part of third persons made out of court is not admissible in exculpation of those on trial for crime. It is mere hearsay, and is excluded for this reason, although other reasons doubtless exist in the uncertainty to which it would subject all criminal proceedings. The following authorities clearly support this view: *Snow* v. *State,* 54 Ala. 138; *Snow* v. *State,* 58 Ala. 372; *West* v. *State,* 76 Ala. 98; *Owensby* v. *State,* 82

Ala. 63, 2 South. 764; *Welsh* v. *State,* 96 Ala. 92, 11
South. 450; *Lyon* v. *State,* 22 Ga. 399; *Moughon* v. *State,*
57 Ga. 102; *Davis* v. *Commonwealth,* 95 Ky. 19, 23 S. W.
585, 15 Ky. Law Rep. 396, 44 Am. St. Rep. 201; *State* v.
*West,* 45 La. Ann. 928, 13 South. 173; *State* v. *Young,*
107 La. 618, 31 South. 993; *State* v. *Evans,* 55 Mo. 460;
*State* v. *Duncan,* 116 Mo. 288, 22 S. W. 699; *State* v.
*Hack,* 118 Mo. 92, 98, 99, 23 S. W. 1089; *Greenfield* v.
*People,* 85 N. Y. 75, 86, 39 Am. Rep. 636; *Id.,* 23 Hun
(N. Y.) 454; *State* v. *White,* 68 N. C. 158; *State* v. *Gee,*
92 N. C. 756; *State* v. *Fletcher,* 24 Or. 295, 33 Pac. 575;
*Peck* v. *State,* 86 Tenn. 267, 6 S. W. 389; *Rhea* v. *State,*
10 Yerg. (Tenn.) 258; *Horton* v. *State* (Tex. Cr. App.),
24 S. W. 28; *Bowen* v. *State,* 3 Tex. App. 623; *United
States* v. *McMahon,* 4 Cranch C. C. 573, Fed. Cas. No.
15,699; *United States* v. *Miller,* 4 Cranch C. C. 104, Fed.
Cas. No. 15,773.

Wigmore, in his learned work on Evidence, while ad-
mitting that the weight of authority sustains the rule as
stated, condemns it as unsound and barbarous.  2 Wig-
more, section 1476.  In this he finds no support in the
other text-writers on the subject, nor in the legal en-
cyclopedists, who perhaps had greater deference for the
opinions of those learned judges who, daily witnessing
the application of the law, refused to sacrifice its whole-
some principles to untried theory.  Best on Ev. (3d Am.
Ed.), p. 73; 2 Rice, Cr. Ev., p. 136, section 87; Wharton,
Cr. Ev. (9th Ed.), p. 176, section 225; 12 Cyc., p. 434.
The learned author above named criticises as "curious"
and suggesting a "fantastic suspicion" the following
language employed by the supreme court of Georgia in
the case of *Lyon* v. *State, supra*: "All one defendant
would have to do would be to admit that his guilty ac-
complice was innocent and that he himself had perpe-
trated the crime, absent himself so as to enable the party
on his trial to have the benefit of his admission, and, after
his acquittal, appear, demand his trial, and prove by

the evidence of the acquitted party that he was in fact the guilty person.''

We are unable to concur in the author's estimate of the above reasoning. It commends itself to this court as entirely sound, and, in view of the action of the grand jury in discrediting the confession and refusing to return an indictment against the declarant on the strength of it, we have little doubt that the case in hand itself affords an illustration of such attempts to bring about a miscarriage of justice. The rule excluding such confessions itself suggests the reason why they have not been more frequently resorted to in behalf of the guilty. The confession in question was made out of court, was not supported by the oath of the party confessing, and the party was never subjected to cross-examination, which might very quickly have disclosed the falsity of the confession and the motive that prompted it. The law, in determining what is hearsay, does not admit what a witness states some other person told him, any more that it admits what still another person may have imparted to the one next in line of communication. It is all hearsay; and no just exception can be made because the party confessing has put himself in a position of some hazard. Many motives, apart from the love of truth and justice, induce men to assume the gravest risks. Among the strongest of these is family affection, and it is observable that in this case the property against which the trespass was directed was that of Henry Brown and not his brother, the accused, and that in the confession proposed to be proved Henry Brown, while claiming to be the culprit, stated that his brother ''had suffered long enough about the matter.'' The extreme case of a confession on the gallows by one claiming to be the true offender, employed by Wigmore to illustrate his view, affords no ground for the relaxation of the rule; for the experience assuring us that the last breath of men not wholly bad is sometimes employed in the asservation of

a falsehood justifies the rejection of the hearsay state-
ments of a malefactor who, having no longer any con-
cern as to his own 'fate, may wish to serve a pal, a kins-
man, or a friend. Even dying declarations, which are
restricted to trials where the declarant was the victim
of a homicide, although they derive additional solem-
nity from the fact of approaching death, are admitted
really for necessity, and in order to reach those manslay-
ers who perpetrate their crimes when there are no other
eyewitnesses.

While the question is one of admissibility of evidence,
rather than of its probative force, it might be remarked,
as showing the caution with which all confessions are re-
ceived, that the confession of the accused himself is not
admissible in the absence of evidence establishing the
*corpus delicti.* It is worthy of note in this case that,
although Henry Brown had been present at the previ-
ous trial of his brother, he remained wholly silent as
to his authorship of the crime, and that his confession
was not made until the state had disclosed all of its evi-
dence and the trial resulted in a verdict of manslanghter,
on which his brother was sentenced to imprisonment for
the short term of two years. The hazard he assumed was
not, therefore, one of very great gravity, especially as
his running away on being released goes strongly to
show that, apart from facing a jury in his brother's be-
half, he did not intend to incur any decided risk, and was
ready to recant his confession as soon as it had served
its purpose or exposed him to any great peril. This
much is said in answer to the suggestion that only an
imperative sense of guilt could have moved him to brave
the great dangers that attended his confession, and as
going to show that the supposed harshness of the rule
may afford no reason for not adhering to it and exclud-
ing hearsay evidence as inadmissible.

It is assigned for error that the court below excluded
the following question, addressed on cross-examination

to Vestor Addison, one of the two eyewitnesses of the tragedy and brother to the deceased: ''Wasn't there a crowd of men there, B. Harris and several others, that Mr. McNees got together there and told them they would have to hold the inquest, and you were right there, and they couldn't get any testimony about who did the shooting, and found that he came to his death by an unknown hand?'' The purpose of this question was, of course, to discredit the witness, who had identified the accused as the slayer when seen by moonlight only a few feet distant. The witness had already testified that he paid no attention to the inquest, and it will be observed that the question involves no inquiry as to whether he testified differently, or at all, at the inquest, or was called on to testify at the same, and refused or evaded doing so, but merely that his attitude on the night of the killing was a negative one as to the identification of the accused. While he contradicted the several witnesses who testified that he in terms denied on the night of the killing that he was aware of the identity of the slayer, it was unquestionable on the evidence that he did not that night reveal who had committed the crime, unless he informed the deputy sheriff, who arrested the accused on the same night. This deputy, after he had testified that he made the arrest, was asked by the prosecution what conversation he had with the witness Vestor Addison on that night, when the court excluded the question, on the objection of the defense, and the case went to the jury as if the accused had made no revelation that night as to the identity of the slayer. As thus viewed, the question in relation to the inquest could have evoked no other evidence favorable to the accused than such as would have been at most merely cumulative, and its exclusion does not constitute reversible error.            *Affirmed.*