252 So.2d 217 (1971)
Leon CHAMBERS
v.
STATE of Mississippi.
No. 46379.
Supreme Court of Mississippi.
June 28, 1971.
Rehearing Denied September 14, 1971.
Mullins & Smith, George F. West, Jr., Natchez, for appellant.
A.F. Summer, Atty. Gen., by Timmie Hancock, Special Asst. Atty. Gen., Jackson, for appellee.
PER CURIAM:
Leon Chambers and James Williams were indicted in the Circuit Court of Wilkinson County for the murder of Aaron Liberty on the night of June 14, 1969. A change of venue was granted to the Circuit Court of Amite County, and Chambers and Williams were jointly tried in that court on October 27, 1970. At the close of the evidence, a motion was made for a directed verdict for Chambers and Williams. The court sustained the motion as to James Williams, and overruled the motion as to Leon Chambers.
The jury returned the following verdict against Leon Chambers:
"We the jury find the defendant guilty as charged, and fix his punishment at life in the State Penitentiary".
The court sentenced defendant Chambers to life in the State Penitentiary in accordance with the jury verdict. We affirm.
On the night of June 14, 1969, in the Town of Woodville, Mississippi, on First West Street, which runs north and south, Aaron Liberty, a black part-time policeman for the Town of Woodville, was shot in the back and side four times and was dead on arrival at the Centreville Hospital.
Woodville policemen Forman and Liberty had gone to Hayes' Cafe to arrest C.C. *218 Jackson, against whom an affidavit had been made and an arrest warrant issued. A crowd of 20 or 30 blacks prevented these two officers from arresting Jackson and putting him in their patrol car. After Forman had radioed for help, Liberty was standing on the west side of the street close to an alley between Jack's Coffee Shop on the north and the Health Center on the south.
Deputy Sheriffs Gordon Geter, Waldo Welch and Herman Anthony responded to the call for help, and Geter at the time of the shooting was in about the middle of the street facing Liberty, who had his back to the alley. A volley of five or six shots was fired from the alley, four of which hit Liberty in the back and side, and Liberty turned toward Welch and told him that he (Liberty) had been shot. Welch told him to "kill him", whereupon Liberty turned toward the alley and fired two shots from his riot gun down the alley. Liberty appeared to take deliberate aim on his second shot. The second shot hit defendant Leon Chambers in the head and neck and Chambers fell. Liberty then tried to walk to the patrol car, collapsed, was placed in the patrol car by his fellow officers, and taken to the Centreville Hospital. He was dead on arrival at the hospital.
Chambers was picked up and placed in the car of James Williams, who, with Gable McDonald and Berkley Turner as helpers, carried Chambers to the Centreville Hospital.
The shooting occurred on a Saturday night, and later that night Sheriff H.B. McGraw of Wilkinson County placed a guard at the door of Chambers' hospital room.
About five months later, that is, on November 10, 1969, Gable McDonald was taken to the law officers of Mullins and Smith in Natchez by Reverend Stokes, a black preacher, and in the presence of Clyde W. Mullins, Cecil G. Smith, Jr., and George F. West, Jr., attorneys for Chambers and Williams, and in response to questions propounded to him by Mullins, McDonald, an illiterate black, confessed that he shot Officer Liberty with a 22-caliber revolver. The statement was typed up, read by West to McDonald, and then signed by mark and sworn to by McDonald.
McDonald was arrested and placed in jail, where he remained until a preliminary hearing for him before a justice of the peace on December 9, 1969. McDonald completely repudiated his confession. He testified at his preliminary hearing that Sammy Hardin had told his (McDonald's) wife that Reverend Stokes wanted to see him and for her to write him where he was working in Louisiana. McDonald received this message on Wednesday or Thursday and came to Natchez on Saturday of that week, and went to Reverend Stokes' filling station. Stokes took him to a little storage room on the side of the filling station and talked with him about confessing that he killed officer Liberty. McDonald testified that Stokes had a long tablet with some handwriting on it, and that:
"He asked me about owning the killing of Sonny Liberty. I told him I couldn't do that. I said if I do they'll send me to the pen owning something like that. He said, no, the law ain't going to know nothing about it. He just wanted the statement. Wasn't no law or nothing, I wouldn't have to go to jail or nothing."
McDonald testified further that Stokes told him on that occasion:
"He said he would sue the Town for so many thousand dollars and he said that would be divided between the three of us. I disremember now how many thousand dollars it was."
The three referred to were James Williams, Leon Chambers, and McDonald.
McDonald stated that Stokes rehearsed him on his answers for about three hours that Saturday morning; that Stokes then contacted West, the attorney; that West *219 told Stokes to have McDonald return on Monday and they would have a stenographer to take down his statement. McDonald did return the following Monday, went to Stokes' filling station, was again rehearsed by Stokes on the answers he should give, and was then taken by Stokes to the law offices of Mullins and Smith.
McDonald was called as a witness for the defense, was allowed to testify about his confession, Reverend Stokes' promises to him, and his subsequent repudiation of his confession. He testified that he did not kill Liberty and had nothing whatsoever to do with the killing. Appellant renewed his motion to be allowed to examine McDonald as an adverse witness, which motion the court overruled.
Deputy Sheriff Geter testified for the State that he was facing Liberty at the time he was shot, and that he saw Leon Chambers shoot Liberty in the back and he saw Chambers with the gun in his hand.
Deputy Sheriff Welch testified that he saw Chambers break his right hand down, and immediately thereafter heard five or six shots fired, but he did not actually see the gun in Chambers' hand. Welch did testify that when Liberty told him that he was shot, he told Liberty to "kill him" and that Liberty then turned and fired two shots down the alley, taking deliberate aim on his second shot and hitting Chambers with it.
Sammy Hardin testified for the defendant that he saw Gable McDonald shoot Liberty, and that he was positive of that.
William Vaughn testified that he did not see McDonald at Gladys' Cafe until after the shooting, and that he saw McDonald in the back door of the cafe with a gun in his hand.
Thomas Russ testified that he was driving his car north on First West Street, that he was prevented from proceeding by the crowd; that he saw Liberty when he was shot; that he saw Chambers about six or eight feet from Liberty but was positive that Chambers did not shoot Liberty.
Albert Carter, called as a witness for the defendant, testified that he was not in Woodville on Saturday, June 14, 1969, when the shooting occurred, but that the next day Gable McDonald came to his house. After the jury had been excluded, Carter testified that later on, on that Sunday, he went to McDonald's house, and that as they walked to a spring near his house that McDonald told him that he did the shooting. Carter, upon being asked if Gable told him why he shot Liberty, answered:
"He said if Mr. Liberty hadn't shot  I mean, if Gable hadn't shot Mr. Liberty, he was going to shoot him or somebody."
The trial judge excluded this testimony from the jury on the ground of hearsay.
Also excluded from the jury on the ground of hearsay was the testimony of Berkley Turner that on the way back from Centreville Hospital where they had delivered Leon Chambers that Gable McDonald said that he was the one who shot Aaron Liberty.
Two of the eight errors assigned were:
(1)
The lower Court erred in refusing to permit the Defendant to examine Gable McDonald as an adverse, hostile witness.
(2)
The lower Court erred in refusing to admit testimony corroborating a third party confession after the confession was introduced and supported by eye witness testimony.
The trial judge did allow the confession of Gable McDonald to be introduced and his subsequent repudiation of it at his preliminary hearing on December 9, 1969. He allowed extensive direct and cross-examination of McDonald about his confession, his subsequent repudiation, his *220 actions and conduct on the night of the murder.
McDonald's testimony was not adverse to appellant; it was merely in McDonald's defense and in explanation of his rather unusual confession. Nowhere did he point the finger at Chambers. The trial judge did not abuse his discretion when he refused to allow the appellant to examine McDonald as an adverse witness.
Sammy Hardin was allowed to testify that he saw McDonald shoot Liberty; William Vaughn was allowed to testify that he saw McDonald in the back door of Gladys' Cafe immediately after the shooting with a gun in his hand; Thomas Russ was allowed to testify that he was in his car in the middle of First West Street, that he saw the shooting and was positive that Chambers did not do it.
The only testimony that the trial judge excluded from the jury was the hearsay testimony of Albert Carter and Berkley Turner that McDonald had admitted to them that he did the shooting. He was correct in so doing.
In this case, the trial court went considerably further in allowing testimony from and about a mere witness than any Mississippi court has ever done in the past. See Roundtree v. State, 107 Miss. 166, 65 So. 125 (1914), and Brown v. State, 99 Miss. 719, 55 So. 961 (1911). 22A C.J.S. Criminal Law § 749, page 1115 (1961), says the reason for excluding testimony like Carter's and Turner's is because it is hearsay testimony.
This case went to the jury on conflicting testimony. McDonald's connection with the case was fully and carefully explored. It was up to the jurors as to which witness or witnesses they would believe, and how much of each witness's testimony they would believe. They weighed the testimony of each witness as was their solemn duty; we cannot say that they were wrong in believing some witnesses and disbelieving others.
There was ample testimony to support their verdict, and the judgment of the trial court is affirmed.
Affirmed.
All Justices concur except RODGERS, J., who dissents.
RODGERS, Justice (dissenting):
With deference to the considered opinion of my colleagues, I am constrained to voice my contrary conclusions. I am convinced that the testimony of the defense witnesses, Berkley Turner and Albert Carter, should have been admitted in evidence to the jury. These witnesses testified in the absence of the jury that one Gable McDonald told them that he shot the deceased policeman, Aaron Liberty.
Gable McDonald was called as a witness for the defendant and he admitted that he had given a signed confession in which he admitted the killing of Aaron Liberty, but denied that the confession was voluntary. The defendant requested the right to cross-examine the witness as to his explanation of the confession. The court refused to permit the defendant to cross-examine the witness upon the ground that he was hostile. The defendant was thus prevented from laying a predicate to impeach the witness. It must be emphasized that the court permitted the defendant to show the confession of Gable McDonald by his own testimony. Gable McDonald was alive, not beyond the jurisdiction of the court, and he did not object to being questioned in open court upon the ground that his testimony might incriminate him. His testimony in effect denied that he in fact made a confession.
I am of the opinion that the trial court was correct in admitting the confession of Gable McDonald, although this Court has held to the contrary in the cases of Brown v. State, 99 Miss. 719, 55 So. 961 (1911), and Roundtree v. State, 107 Miss. 166, 65 So. 125 (1914). The reason given for the exclusion of this testimony is that the testimony *221 is hearsay. See: 22A C.J.S. Criminal Law § 749, page 1115 (1961).
The fallacy followed by our Court and others originated in The Sussex Peerage case, XI Cl. & Fin. 85, 8 Eng.Rep. 1034 (1844), in England. See: Conn. Bar Journal, Vol. 44, pages 276, 277 (1970); Fordham L.Rev., Vol. 39 No. 1 (1970). Declarations against interest had been admitted in evidence for over two hundred years prior to Sussex as an exception to the hearsay rule as to admissions against interest in a pecuniary or proprietary interest case. In the Sussex case a party attempted to establish his parents' lawful marriage by the admission of a deceased person's declaration that he had married the couple under circumstances which made the act criminal. The court held the declaration against penal interest to be inadmissible and warned against extending exceptions to the hearsay rule. The rule in the Sussex case was adopted by the United States Supreme Court in Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913). Justice Holmes wrote a dissenting opinion in which he cites 2 Wigmore on Evidence §§ 1476, 1477.
There can be little question but that the modern trend is to admit the admissions as an exception to the hearsay rule in penal cases as well as in pecuniary or proprietary cases where, (1) material, (2) where the declarant is dead, (3) beyond the jurisdiction of the court, or where he is in court and refuses to testify on the ground of self-incrimination. People v. Brown, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970); People v. Spriggs, 60 Cal.2d 868, 36 Cal. Rptr. 841, 389 P.2d 377 (1964); Mason v. United States, 257 F.2d 359 (10th Cir.1958); People v. Lettrich, 413 Ill. 172, 108 N.E.2d 488 (1952); Newberry v. Commonwealth, 191 Va. 445, 61 S.E.2d 318 (1950); Fordham L.Rev., Vol. 39 No. 1, page 136 (1970); Conn. Bar Journal, Vol. 44, pages 276, 277 (1970); Thomas v. State, 186 Md. 446, 47 A.2d 43 (1946). The Sussex rule was changed so as to admit confessions in American Law Institute Model Code on Evidence, Rule 509, page 255, illustration number 4 (1942).
My colleagues point out that the witness was on the witness stand and the defendant laid no predicate to introduce other confessions. The answer to this postulate is that the court would not permit the defendant to cross-examine his witness.
In any case, however, it seems to me that since the court had permitted the witness, Gable McDonald, to testify that he had confessed to killing the policeman but denied the truth of the confession, the defense should have been permitted to show that McDonald had confessed to several persons. It must be remembered that witnesses testified that they saw McDonald shoot the policeman. It is abundantly clear that the witness was at the place where, and at a time when, he could have shot the policeman. Moreover, he was seen with a gun in his hand at the time of the fatal shooting. See the cases cited on this subject in 167 A.L.R. 394, 401 (1947).
I am convinced that it was a reversible error to exclude the testimony of other confessions in this case.