[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16162

_____

D.C. Docket No. 1:12-cr-00311-AT-JSA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MLADEN MITROVIC,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 23, 2018)

Before WILLIAM PRYOR, and JULIE CARNES, Circuit Judges, and
CORRIGAN,[*] District Judge.

_____

[*] The Honorable Timothy J. Corrigan, United States District Judge for the Middle District of
Florida, sitting by designation.

CORRIGAN, District Judge:

Accused of concealing from immigration authorities his past as a guard at a Serbian prison camp, Defendant Mladen Mitrovic appeals his conviction for unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(b) and 8 U.S.C. § 1451(e). Mitrovic asserts that the district court erred when it prevented him from presenting hearsay statements of foreign witnesses who were unavailable to testify at trial. Additionally, he argues that the district court erred in refusing to take judicial notice of Articles Four and Forty of the Fourth Geneva Convention. Both errors, according to Mitrovic, deprived him of his constitutional right to present a complete defense. With the benefit of briefing and oral argument, we affirm Mitrovic's conviction.

I.

*A. Historical Background*

In the early 1990s, the former Yugoslavia broke apart into its constituent republics, which mostly were divided along ethnic lines. Bosnia and Herzegovina, one such republic, declared independence in March, 1992. Unlike the other republics, Bosnia was not dominated by a single ethnicity and instead was comprised of approximately forty percent Bosniaks, thirty percent Serbs, and twenty percent Croats. These ethnicities were divided by religious affiliations: Bosniaks were Muslim, Serbs were Eastern Orthodox Christian, and Croats were

2

Catholic. Serbian nationalists did not want to be a part of a multi-ethnic state and sought to carve out their own Serbian dominated state—known as *Republika Srpska*. This area contained the region, and city, of Prijedor.

The Serbs organized their own army, the VRS,[1] and began ethnic cleansing across the Prejidor region. The VRS was comprised mainly of Serbs, but non-Serbs, such as Mitrovic, could serve to demonstrate their loyalty. Non-Serbs who were not killed were taken prisoner and sent to various prison camps, including one in Trnopolje, approximately ten kilometers from the city of Prejidor. The government contends that Mitrovic was a guard at the Trnopolje camp. Mitrovic argues that he was not a guard, but was conscripted into forced labor during the Bosnian conflict.

On November 20, 1996, United States immigration officials interviewed Mitrovic regarding his I-590 refugee application. On this application, and reaffirmed during his interview, Mitrovic stated that his only prior military service was as a cook in the Yugoslavian army from 1980 to 1982. Based on his answers, Mitrovic was given refugee status and admitted to the United States.

Later, Mitrovic applied for United States citizenship and on October 3, 2002, he was approved for naturalization as a U.S. citizen. On his application and in his interview, Mitrovic asserted that he had never persecuted anyone on account of

---

[1] The acronym "VRS" comes from *Vojska Republike Srpske*. This military outfit is also referred to as the Bosnian Serb Army ("BSA").

3

their race, religion, national origin, membership in a particular social group, or political opinion. However, the government contends that because Mitrovic was a guard who beat prisoners at the Trnopolje prison camp, his answers given on both the refugee and naturalization applications were false. He was charged via a superseding indictment on November 18, 2014, pleaded not guilty, and went to trial.

## B. Procedural Background

Before trial, Mitrovic's defense team travelled to Bosnia and interviewed people who had material information. The witnesses were outside the subpoena power of the United States and refused to voluntarily testify at trial. Thus, after the team returned, Mitrovic filed a motion to depose the individuals he had interviewed pursuant to Federal Rule of Criminal Procedure 15. Mitrovic obtained permission from the Bosnian government to depose the witnesses, and before departing, his counsel called the witnesses who reaffirmed their willingness to be deposed. However, upon the defense team arriving in Bosnia, several witnesses refused to be deposed. Most of the witnesses who refused to be deposed had been in the Trnopolje prison camp for longer than those who were deposed and had originally told Mitrovic's defense team that they never saw Mitrovic as a guard at the camp.

4

Upon returning to the United States, Mitrovic filed a motion to allow the investigator who interviewed the recalcitrant witnesses to testify to what the witnesses said during their initial interviews. In the motion, Mitrovic summarized the witnesses' statements: most had been in the camp for an extended period and never saw Mitrovic. Mitrovic argued that the statements should be excepted from the hearsay rule, or, alternatively, should be admissible because not allowing the statements would deprive Mitrovic of his constitutional right to present a complete defense, citing Chambers v. Mississippi, 410 U.S. 284 (1973). The government opposed the motion, and the district court denied it, ruling that the hearsay statements were inadmissible because they did not have the required indicia of reliability.

At trial, the government called eleven witnesses: seven were prisoners at the Trnopolje prison camp who claimed to have seen Mitrovic as a guard, several of whom claimed that Mitrovic beat prisoners; two were immigration officers who interviewed Mitrovic as part of the refugee and naturalization process; one was the case agent; and one was an expert on the Bosnian conflict. The government also introduced an application by Mitrovic for veteran's benefits for injuries sustained during the Bosnian conflict, and the Bosnian government's approval of that claim. Once the jury had been excused after the conclusion of the government expert's testimony, Mitrovic requested the court take judicial notice of the Geneva

5

Convention to show that the Bosnian government would not have created a document indicating it conscripted individuals into forced labor, so instead it treated such documents as veteran's benefits. The district court refused, stating that the information would confuse the jury.

During his case, Mitrovic presented five witnesses by deposition who either visited or were prisoners at the camp and never saw Mitrovic there. Unlike many of the witnesses who refused to be deposed, most of these witnesses were only in the camp for short periods. Seven other witnesses testified that they were Mitrovic's neighbors during the time the camp was open. They lived in Prijedor, most saw Mitrovic there often, and never saw him wearing a uniform or carrying a weapon. Additionally, most knew Mitrovic as a Croat Catholic. The defense investigator testified that Mitrovic had identified a number of witnesses in Bosnia who recanted their agreement to be deposed and that Mitrovic lacked the subpoena power to compel them to testify. The jury found Mitrovic guilty.

## II.

Constitutional questions are reviewed de novo and evidentiary rulings are reviewed for an abuse of discretion. United States v. Underwood, 446 F.3d 1340, 1345 (11th Cir. 2006). Additionally, "[a]n erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless." United States v. Frediani, 790 F.3d 1196, 1200 (11th Cir. 2015) (quotations omitted).

III.

*A. Exclusion of Witness Statements*

Relying on <u>Chambers</u>, Mitrovic argues that the district court violated his right to present a complete defense when it refused to admit hearsay statements of recalcitrant witnesses. Mitrovic sought to admit the statements of the ten recalcitrant witnesses through the defense investigator who interviewed them. Each were Muslim prisoners at the Trnopolje camp, many of them for longer than the witnesses who did testify for Mitrovic. Each had stated that they never saw Mitrovic as a guard at the camp. However, according to Mitrovic, these witnesses refused to be deposed because they did not want to be perceived as helping a Serb—doing so might subject them to social disgrace. One such witness is the president of a "survivors club," and he refused to be deposed because "he would lose people's trust, friendship and respect if it was perceived he said anything that could help a Serb." Appellant's Br. at 9.

The government contends that the district court properly applied the Federal Rules of Evidence, that proper application of the Rules cannot violate a defendant's right to present a complete defense, and that even if proper application of the Rules could in some circumstances violate a defendant's right to present a complete defense, Mitrovic failed to satisfy the requirements for admission under <u>Chambers</u>.

7

1. <u>The Federal Rules of Evidence and the Right to Present a Complete Defense</u>

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense . . . ." <u>Nevada v. Jackson</u>, 569 U.S. 505, 509 (2013) (alteration in original) (quotations omitted) (quoting <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)). However, a defendant's right to present a complete defense is not absolute, and is subject to reasonable restrictions. <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998) (citing <u>Chambers</u>, 410 U.S. at 295). "As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" <u>Id.</u> (quoting <u>Rock v. Arkansas</u>, 483 U.S. 44, 56 (1987)).

Rules of evidence should not be "mechanistically" applied if doing so prohibits a defendant's constitutional right to present a complete defense. <u>Chambers</u>, 410 U.S. at 302. In <u>Chambers</u>, the Supreme Court held that the combination of two Mississippi rules of evidence unconstitutionally prevented the defendant from presenting a complete defense:

> Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more

8

frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

Id. (citations omitted).

Including Chambers, only infrequently has the Supreme Court held that a state rule of evidence violated a defendant's right to present a complete defense, see Jackson, 569 U.S. at 509 (citing Holmes v. South Carolina, 547 U.S. 319, 331 (2006); Rock, 483 U.S. at 61; Chambers, 410 U.S. at 302–03; and Washington v. Texas, 388 U.S. 14, 22 (1967)), and it has never held that a federal rule of evidence violated a defendant's right to present a complete defense, cf. Scheffer, 523 U.S. at 317 (upholding a Military Rule of Evidence that prohibited admission of polygraph tests).

Similarly, this Court has never overturned a district court's proper application of a Federal Rule of Evidence as violating Chambers.[2] Further, this

---

[2] Mitrovic cites United States v. Hurn, 368 F.3d 1359, 1363 n.2 (11th Cir. 2004), for the statement: "the fact that a particular rule of evidence requires the exclusion of certain evidence is not dispositive, as particular applications of a generally valid rule may unconstitutionally deny a defendant his rights under the Compulsory Process or Due Process Clauses." However, the citation supporting this proposition was a case discussing state evidentiary and procedural rules, see id. (citing Knight v. Dugger, 863 F.2d 705, 729 (11th Cir. 1988)), and the other cases that

9

Court has emphasized that the trial judge's role as gatekeeper is to ensure that the factfinder bases its decision only on relevant and reliable information. Frazier, 387 F.3d at 1272. "These bedrock principles establish that, while a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth." Id.

The Federal Rules governing the admissibility of hearsay are neither arbitrary nor disproportionate. See Scheffer, 523 U.S. at 308. They seek to further the laudable goal of excluding unreliable evidence. Id. at 309 (citing Fed. R. Evid. 802). The hearsay Rules also provide numerous exceptions that allow admission of otherwise reliable and trustworthy evidence. Further, Rule 807 negates any contention that the Rules are arbitrary because it allows trustworthy hearsay evidence that does not fall within any of the other exceptions. The Rules governing hearsay therefore help ensure that only reliable evidence is presented to the trier of fact. See id. at 309. Because the Rules governing hearsay are neither arbitrary nor disproportionate, their proper application here did not violate Mitrovic's right to present a complete defense. See id. at 308.

Additionally, applying the federal hearsay Rules did not "infringe[] upon a weighty interest of the accused." Id. Like in Scheffer, the factfinder here "heard all

---

Hurn relies upon were either state evidentiary rulings or an abuse of discretion by the trial court in applying a particular federal rule. Id. at 1364–67.

10

the relevant details of the charged offense from the perspective of the accused, and the Rule did not preclude him from introducing any factual evidence." Id. at 317. Rather, Mitrovic was only unable to increase the quantity of witnesses who would tell the jury what other witnesses already said—that they were at the camp and did not remember seeing Mitrovic. While this additional evidence may have benefited Mitrovic, it was not essential to a complete presentation of his defense.

### 2. Admission of Otherwise Excluded Evidence Under *Chambers*

Even if the correct application of the Federal Rules of Evidence could result in a violation of a constitutional right under Chambers, Mitrovic has not satisfied the Chambers factors. In Chambers, the defendant stood trial for shooting a police officer. 410 U.S. at 285. Another man, McDonald, had confessed to the shooting, but at trial he recanted, and the trial court did not allow the defendant to impeach McDonald because of Mississippi's "Voucher Rule."[3] Id. at 287–91. Further, the court did not allow the defendant to call other witnesses to whom McDonald had confessed because those confessions were hearsay, and Mississippi did not have an exception for statements against penal interest. Id. at 292–93, 299. The Mississippi Supreme Court affirmed the trial court's rulings, but the Supreme Court reversed, holding that the hearsay statements should have been allowed. Id. at 293, 302.

---

[3] The "Voucher Rule" stated that a party calling a witness could not impeach him because by calling him as a witness the party was "vouching" for his credibility. Chambers, 410 U.S. at 295–96.

11

The Supreme Court based its decision on four primary factors. First, McDonald's statements confessing to the crime were made in close temporal proximity to the crime and were spontaneously made to close acquaintances. Id. at 300. Second, the statements were corroborated by the sheer number of times McDonald confessed and other evidence.[4] Id. at 300. Third, the statements were unquestionably against the declarant's penal interest. Id. at 300–01. Fourth, McDonald was available in the courtroom and the State could have cross examined him on the statements. Id. at 301. Concerning the State's ability to cross examine McDonald, the Supreme Court emphasized that, "[t]he availability of McDonald significantly distinguishes this case from the prior Mississippi precedent, Brown v. State, . . . and from the Donnelly-type situation, since in both cases the declarant was unavailable at the time of trial."[5] Id. at 301.

---

[4] The corroborating evidence was:

> McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each.

Id. at 300.

[5] In Brown v. State, 55 So. 961, 961 (Miss. 1911), the Mississippi Supreme Court declined to admit a hearsay statement by the defendant's brother confessing to the crime. The defendant's brother could not be found during trial. Id. The court stated:

> It is well settled that testimony going to show confessions and admissions on the part of third persons made out of court is not admissible in exculpation of those on trial for crime. It is mere hearsay, and is excluded for this reason, although other reasons doubtless exist in the uncertainty to which it would subject all criminal proceedings.

Id.

The hearsay statements that Mitrovic seeks to admit differ significantly from those in Chambers. First, the statements in Chambers were exculpatory—if believed they exonerated Chambers—but here, the statements merely are helpful, not exculpatory. See Chambers, 410 U.S. at 300–01. Additionally, the statements were made to Mitrovic's defense team twenty years after the alleged events, thus they were not contemporaneous. See id. at 300.

Second, the evidence corroborating the hearsay statements is much less impactful than in Chambers. Id. at 300–01. Mitrovic presented testimony of individuals who did not see him at the camp and testimony of individuals who saw him every day at his home ten kilometers from the camp. However, unlike Chambers, where McDonald's trial testimony was the only evidence contrary to his previous hearsay confessions, here, the government presented many witnesses who testified to seeing Mitrovic at the camp. See id. at 301. Thus, Mitrovic's corroborating evidence is far less compelling than in Chambers. See id.

The third factor slightly benefits Mitrovic. Although the recalcitrant witnesses' statements were not made against a pecuniary or penal interest, they

In Donnelly v. United States, 228 U.S. 243, 276 (1913), the Supreme Court held that a third-party out of court confession that tends to exonerate the defendant is inadmissible hearsay. The Court reviewed the history of the hearsay rule and established that the "statements against interest" exception only applied to statements against a pecuniary interest. Id. at 273–75. The cases examined by the Court reviewed situations where the confessing declarant was unavailable, which distinguishes Chambers from Donnelly. See Chambers, 410 U.S. at 301; Donnelly, 228 U.S. at 274–76. Thus, in Chambers the United States Supreme Court distinguished both Donnelly and Brown on the basis that the declarant was unavailable in those cases.

13

were possibly made against a social interest. Mitrovic asserts that the witnesses who refused to be deposed were Muslims, their statements supported someone perceived to be a Serb, and helping a Serb could potentially subject them to "public scorn and reputation assassination." Appellant's Br. at 37. Even if it is conceded that the statements were against a social interest, it is disputed whether a statement against social interest provides the necessary indicia of reliability to except it from the rule prohibiting hearsay. The government cites the Notes to the 1974 Enactment of Rule 804(b)(3) for the proposition that statements against a social interest lack the "sufficient guarantees of reliability." Appellee's Resp. Br. at 24.[6] The government's statement is correct as it pertains to Rule 804(b)(3); however, it does not necessarily follow that such statements are not "trustworthy" under Chambers.

A social interest exception to the prohibition of hearsay is codified in eleven states. See Edward J. Imwinkelried, Declarations Against Soc. Int.: The (Still) Embarrassingly Neglected Hearsay Exception, 69 S. CAL. L. REV. 1427, 1430

---

[6] The Note states:

> The Court's Rule also proposed to expand the hearsay limitation from its present federal limitation to include statements subjecting the declarant to criminal liability and statements tending to make him an object of hatred, ridicule, or disgrace. The Committee eliminated the latter category from the subdivision as lacking sufficient guarantees of reliability.

Fed. R. Evid. 804, Advisory Comm. Notes, 1974 Enactment, Note to Subdivision 804(b)(3).

(1996).[7] However, "even in jurisdictions theoretically admitting statements against social interest, litigants and judges rarely invoke that theory as a basis for admitting hearsay testimony." Id. at 1431. Mitrovic argues that because the government sought a protective order to delay identifying its witnesses due to ethnic tension in Bosnia, the hearsay statements of the recalcitrant witnesses were sufficiently against their interest to make them reliable. However, even if a social interest hearsay exception might be applicable in a given circumstance, the district court did not err in not applying it here.

Fourth, the declarants were not available for cross examination. Mitrovic states that the government's cross examination of Mitrovic's investigator—the witness who would have introduced the hearsay statements—could have been even more effective than if the witnesses themselves had been deposed. Appellant's Reply Br. at 7. Mitrovic further contends, that because the government never asserted that the declarants were untruthful, their absence from trial is unimportant. Id. However, the right to cross examine witnesses "helps assure the accuracy of the truth-determining process," Chambers, 410 U.S. at 295 (quotations omitted), and the availability of the declarant to be cross examined by the State at trial weighed heavily in the Chambers holding, see id. at 301. The government may not doubt that the declarants did not see Mitrovic at the camp, but the government had no

---

[7] Imwinkelried's article argues that statements against a social interest can be trustworthy and reliable and should not be automatically rejected.

15

opportunity to delve into the reasons why that was so. Appellee's Resp. Br. at 26 (stating that cross examination of the witnesses could have revealed that there were thousands of prisoners at the camp, the camp was chaotic, and prisoners sought to avoid guards—all reasons why a prisoner may not have seen a particular guard at the camp).

Mitrovic has not demonstrated that his constitutional rights were violated under Chambers. Only one factor potentially helps Mitrovic, while the remaining factors significantly distinguish his case.

### B. Refusal to take judicial notice of the Geneva Convention

Well into the trial, Mitrovic, for the first time, asked the district court to take judicial notice of the Geneva Convention. Mitrovic wanted to argue that Bosnia would not submit documentation that it conscripted Mitrovic into forced labor because such conscription would have violated the Geneva Convention. Thus, Bosnia falsely claimed that Mitrovic was in military service during that time.

Although the parties spent the majority of their briefing concerning judicial notice on whether the Geneva Convention, as used here, is an adjudicative or legislative fact, the district court excluded the evidence on other grounds: that it was too confusing.[8] (Doc. 319 at 1362–66).

---

[8] The district court's ruling raises a question regarding the order of analysis when taking judicial notice: must evidence be relevant and probative to be judicially noticed, or should the other Rules be applied to determine admissibility only after a fact is judicially noticed? Some courts

Assuming, arguendo, that the Geneva Convention could be judicially noticed, the district court did not err in determining that its probative value was substantially outweighed by the possibility of confusing the issues and potentially misleading the jury. See Fed. R. Evid. 403. The district court explained that without the aid of expert testimony, the jury would not know how to apply the Geneva Convention—if it even applied at all.[9] Additionally, the court told Mitrovic that he would still be able to argue at trial that he was conscripted into forced labor and was not a prison guard—which he did.

Mitrovic wanted to use the Geneva Convention to show that Bosnia would not state that it conscripted Mitrovic into forced labor because doing so was a violation of the Geneva Convention. He states: "Without the court taking judicial

have refused to take judicial notice when the information fails to satisfy other Rules. See, e.g., United States v. Perkins, 548 F.3d 510, 514–15 (7th Cir. 2008) (stating that the court had to undergo a four prong test based on the requirements of Rules 404(b) and 403 to take judicial notice of a prior conviction); Wooden v. Mo. Pac. R.R. Co., 862 F.2d 560, 563 (5th Cir. 1989) (refusing to notice facts that would confuse the jury); United States v. Falcon, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997) ("[A] court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules."), aff'd, 168 F.3d 505 (11th Cir. 1999).

Other courts have treated the inquiry as twofold: (1) is the information subject to judicial notice; and if so, (2) is the information admissible. See, e.g., Bagley v. City of Sunnyvale, No. 16-cv-02250-JSC, 2017 WL 5068567, at *3 (N.D. Cal. Nov. 3, 2017) ("There is a distinction between whether the Court may take judicial notice of a fact and whether that fact is admissible."); Diaz-Morales v. Rubio-Paredes, 196 F. Supp. 3d 203, 206 (D.P.R. 2016) (taking judicial notice of a vacatur of a prior conviction, but refusing on Rule 403 grounds to provide a copy to or read it before the jury); Howard v. Nucor-Yamato Steel Co., No. 3:14CV00202 JLH, 2015 WL 5634526, at *2 (E.D. Ark. Sept. 24, 2015) (stating that just because information can be judicially noticed does not mean that it is admissible). Although not necessary to the decision here, the correct approach appears to be the two-step analysis: first, is the evidence of the type that can be judicially noticed, and, if so, is such evidence admissible.

[9] There is substantial doubt whether the Geneva Convention even applies in these circumstances.

17

notice, . . . Mitrovic was left with the unsubstantiated and unsupported argument that the document [showing Mitrovic was in the VRS] was false." Appellant's Reply Br. at 15. However, the Geneva Convention does not support or substantiate that the document was false. At most it tangentially and indirectly supports an argument that Bosnia would not create a document stating it conscripted people into forced labor because such conscription would have violated the Geneva Convention. The value of the Geneva Convention in this instance is minimal—no country, regardless of whether it signed the Geneva Convention, would want to admit that it conscripted its own nationals into forced labor. Furthermore, Mitrovic made this argument to the jury: "Forced labor. The Bosnian government is not going to admit to enslaving people. It is just not going to do it. They are not going to put in writing, we're doing this stuff that we're not supposed to do." (Doc. 320 at 1466). Judicial notice of the Geneva Convention would not have enhanced Mitrovic's argument. Thus, the district court was well within its discretion in concluding that the slight probative value of the evidence was substantially outweighed by the risk of confusion. (Doc. 319 at 1362–66).

Further, the district court did not violate Mitrovic's rights under Chambers when it declined to take judicial notice. Rule 403 is not "'arbitrary' or 'disproportionate to the purposes [it is] designed to serve'" as a categorical rule or as applied to the district court's refusal to take judicial notice of the Geneva

18

Convention and Bosnia's signatory status. <u>Scheffer</u>, 523 U.S. at 308 (quoting <u>Rock</u>, 483 U.S. at 56). Rule 403 and the Constitution give district courts wide latitude to determine whether the negative consequences of admitting evidence—confusing the jury—<u>substantially</u> outweigh the positive consequences of admission—its probative value. <u>See</u> <u>Crane</u>, 476 U.S. at 689–90. Thus, Rule 403 requires district courts to determine proportionality when excluding evidence. Additionally, Rule 403's application here was not arbitrary as it was not even clear whether the Geneva Convention would have applied to the Bosnian Conflict or protected Mitrovic. As the Supreme Court explained, "the Constitution leaves to the judges who must make these [admissibility] decisions wide latitude to exclude evidence that . . . poses an undue risk of . . . confusion of the issues." <u>Crane</u>, 476 U.S. at 689–90 (quotation marks omitted); <u>see also</u> <u>Holmes</u>, 547 U.S. at 326–27.

IV.

We **AFFIRM** Mitrovic's conviction.

19