## IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
## NO. 94-KA-01135 COA

**MOSES DABNEY, III AND JASON PHALO**                                     **APPELLANTS**

**v.**

**STATE OF MISSISSIPPI**                                                                 **APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | DABNEY - 10/06/94 AND PHALO - 09/30/94 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GEORGE T. HOLMES |
| | THOMAS FORTNER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | ED PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MOSES DABNEY, III CONVICTED OF MURDER: SENTENCED TO SERVE LIFE IN THE MDOC; JASON PHALO CONVICTED OF MURDER: SENTENCED TO SERVE LIFE IN THE MDOC. |
| DISPOSITION: | AFFIRMED - 10/7/97 |
| MOTION FOR REHEARING FILED: | October 16, 1997 |
| CERTIORARI FILED: | 12/8/97 |
| MANDATE ISSUED: | |

BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

Moses Dabney and Jason Phalo, co-defendants, were tried together, and each was convicted for the murder of Eddie Wilson, Jr. Aggrieved, both parties present the following issues for review which include:

## DABNEY'S ISSUES

I. WHETHER THE COURT ERRED IN STRIKING POTENTIAL JUROR ANTHONY MCLIN FOR CAUSE?

II. DID THE COURT ERR IN ALLOWING TESTIMONY THAT DABNEY IDENTIFIED A SHIRT ALLEGEDLY WORN DURING THE ALLEGED CRIME?

III. DID THE COURT ALLOW DR. RODRIGO GALVEZ TO IMPROPERLY OFFER OPINION TESTIMONY?

IV. DID THE COURT ERR IN GRANTING THE STATE'S MOTION IN LIMINE REGARDING TESTIMONY ABOUT DABNEY'S LEARNING DISABILITIES AND MILD RETARDATION?

V. WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-7?

VI. WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-6 REGARDING DABNEY NOT TESTIFYING?

VII. WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-3 REGARDING REASONABLE DOUBT?

## PHALO'S ISSUES

I. THE COURT ERRED IN NOT ALLOWING APPELLANT TO PUT ON TESTIMONY CONCERNING AN OUT-OF-COURT STATEMENT MADE BY CO-DEFENDANT MOSES DABNEY. THE COURT HAD PREVIOUSLY RULED THIS STATEMENT TO BE ADMISSIBLE; THE STATEMENT WAS EXCULPATORY ON BEHALF OF THE APPELLANT; AND THE STATEMENT SHOULD HAVE BEEN ADMITTED AS A STATEMENT AGAINST THE PENAL INTEREST OF CO-DEFENDANT DABNEY.

II. THE COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTION TO QUESTIONS ASKED BY THE STATE OF THE STATE WITNESS CURTIS RHONE CONCERNING WHETHER THE DEFENDANT EVER OWNED A GUN IN HIS LIFE OR EVER CARRIED A GUN IN HIS LIFE. THE QUESTIONS AND ANSWERS WERE IRRELEVANT, PREJUDICIAL AND HIGHLY SPECULATIVE IN VIOLATION OF THE MISSISSIPPI RULES OF EVIDENCE. ADDITIONALLY THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR MISTRIAL BASED ON THE ADMISSION OF SAID EVIDENCE.

III. THE COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO AND IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL MADE WHEN THE STATE IN CLOSING DIRECTLY COMMENTED ON THE APPELLANT'S FAILURE TO TESTIFY AT TRIAL.

IV. THE STATE ENGAGED IN REVERSIBLE PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT WHEN IT MADE FALSE AND MISLEADING STATEMENTS OF FACTS WITHIN ITS OWN KNOWLEDGE, THEREBY DENYING THE APPELLANT HIS CONSTITUTIONAL RIGHT TO FAIR TRIAL.

V. THE COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT IT COULD CONSIDER WHETHER THE APPELLANT WAS GUILTY OF THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER BECAUSE THERE WAS A SUFFICIENT EVIDENTIARY AND LEGAL BASIS FOR THE INSTRUCTION.

VI. THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT IT MIGHT CONSIDER WHETHER THE APPELLANT WAS GUILTY OF THE CRIME OF ACCESSORY AFTER THE FACT TO MURDER, THEREBY DENYING THE APPELLANT A FAIR TRIAL.

Finding no error, we affirm both convictions.

FACTS

Moses Dabney and Jason Phalo were convicted for the murder of Eddie Wilson, Jr., which took place on December 31, 1993. The evidence showed that Dabney, age fifteen at the time, Phalo, and two other individuals were riding around the City of Jackson on the afternoon of December 31 when Phalo decided to steal a Chevrolet Blazer from the parking lot of Electric City on I-55 Frontage Road in Jackson. Phalo jimmied the window, stole the Blazer, and drove it off the parking lot. Eddie Wilson, Jr., the owner of the Blazer, saw the Blazer being driven away and asked Tye Carney, a co-worker, to drive him and follow the Blazer. Carney agreed, and the two gave chase until Phalo stopped for a red light at the corner of North State Street and Northside Drive. When Phalo stopped, Dabney jumped into the Blazer. Carney pulled his vehicle in front of the Blazer to block it, and Wilson got out of Carney's car and ran over to the Blazer, opening the driver's door. Carney testified that as he was turning his car around, he heard at least three gunshots and saw Wilson slumping over. He then stated that he saw two young black males in the Blazer. Wilson died as the result of a gunshot wound from a .380 caliber weapon.

State witness Curtis Rhone, one of the individuals riding with Phalo and Dabney before the Blazer was stolen, was in a car directly behind the Blazer. He testified that Dabney was in the vehicle with him, and then Dabney got into the passenger side of the Blazer at the stop light. He stated that when Wilson attempted to pull Phalo out of the Blazer, Phalo kicked at the door. Rhone then heard a shot

being fired from the Blazer and then saw Wilson duck and run in front of the Blazer. Rhone testified that Phalo and Dabney exited the Blazer while Dabney fired several shots at Wilson. Rhone stated that he did not see Phalo with a gun.

State witnesses Jewell Davis, Clara Davis, and Arthur Davis were at the intersection when the incident occurred. Jewell and Clara Davis were in the same vehicle. Arthur Davis was in a vehicle with his son and a friend. Each testified that they saw Dabney firing at Wilson and did not see Phalo shoot, but Clara Davis and Jewell Davis testified that the taller of the two men, which was Phalo, had a gun in his hand when he was running from the scene. However, Clara Davis stated that the person whom she saw running away from the crime scene with a gun was wearing plaid. Dabney was wearing a plaid shirt on the day of the shooting, and his plaid shirt was turned over to the police by Phalo's mother.

Mamie Hardges, another State witness, stated that she concentrated on the driver of the Blazer (Phalo) and saw him with a gun while he was still inside the Blazer. She saw him get out of the Blazer with a gun and she saw him fire the gun at Wilson. Hardges was about five or six feet away from Phalo after Phalo exited the Blazer. Hardges positively identified Phalo from a photo lineup.

ANALYSIS

**DABNEY**

I.

WHETHER THE COURT ERRED IN STRIKING POTENTIAL JUROR ANTHONY MCLIN FOR CAUSE?

Dabney argues that the trial court erred when it excluded juror Anthony McLin for cause after McLin said his religious beliefs kept him from sitting in judgment on anyone. The State contends that Dabney may not raise this issue on appeal. The State further contends the trial court was within its discretion in excusing juror McLin for cause.

During voir dire, the prosecution asked the venire whether any of them were prohibited by their religion from judging another person. Juror Anthony McLin raised his hand and stated, "That's the way I feel." McLin answered positively that he would be offended by having to judge whether a person is guilty or innocent. McLin answered affirmatively that this would be against his conscience. The trial judge granted the State's striking of McLin for cause on a religious basis.

Trial judges have broad discretion in determining whether a prospective juror can be impartial. *Coverson v. State*, 617 So. 2d 642, 646 (Miss. 1993). On appeal, the finding of the circuit court as to a juror's qualifications is prima facie correct. *Donahue v. State*, 142 Miss. 20, 40, 107 So. 15, 19 (1926). Under what is presently Section 13-5-79 of the Mississippi Code Annotated 1972, the excusing of a prospective juror by the trial judge, in the exercise of discretion vested in him, is final.

*City of Jackson v. McFadden*, 181 Miss. 1, 14-15, 177 So. 755, 758 (1937). "On procedural grounds, once the judge exercised his discretion and determined that the juror[] probably could not be impartial, then the determination may not be assigned on appeal as an error." *Coverson*, 617 So. 2d at 646.

In *Coverson*, the Mississippi Supreme Court stated that a defendant has no right to have specific prospective jurors try his or her case and that the defendant cannot complain on appeal of a particular juror exclusion if the end result was a jury composed of fair and impartial jurors. *Coverson*, 617 So. 2d at 646 (citing *Sherman v. State*, 234 Miss. 775, 780, 108 So. 2d 205, 207(1959); *Sullivan v. State*, 155 Miss. 629, 125 So. 115, 117 (1929)). We agree with *Coverson* and conclude that Dabney was not prejudiced by the striking of juror McLin. McLin answered affirmatively to a question posed to him during voir dire that he would be unable to judge whether or not either Dabney or Phalo were guilty because of his religious beliefs, which he could not set aside. At this point, McLin was no longer an impartial juror. Dabney's counsel did not object to the striking of McLin, and Dabney does not assert that his jury was not fair and impartial. Dabney only complains that the trial court erred by striking McLin on religious grounds. Dabney has failed to show how the striking of McLin has prejudiced him, and he has failed to show how the trial court abused its discretion in striking McLin. We affirm the trial court on this issue on both procedural and substantive grounds.

II.

DID THE COURT ERR IN ALLOWING TESTIMONY THAT DABNEY IDENTIFIED A SHIRT ALLEGEDLY WORN DURING THE ALLEGED CRIME?


Dabney argues that the trial court erred in admitting into evidence a shirt worn by him during the commission of the crime. In this instance, Phalo introduced the shirt during his case-in-chief. The State did not attempt to introduce the shirt into evidence. Dabney asserts that because of his youth (fifteen years old at the time of the murder), inability to read, and low IQ, he lacked the intelligence to understand his rights, and to ultimately waive them. Dabney stated to police that he was the owner of a plaid shirt which was allegedly worn during the incident. The shirt was admitted into evidence by Phalo, Dabney's co-defendant. The State asserts that the introduction of the shirt did not amount to a confession by Dabney. Further, the State contends that even if Dabney's statement was a confession, Dabney knowingly and intelligently waived his rights before speaking with the police.

Clara Davis stated that the person whom she saw running away from the crime scene with a gun in his hand was wearing a plaid shirt. Phalo's mother called the police and told them that she had a plaid shirt of Dabney's in her possession. The shirt was picked up at Phalo's home and brought to the police station by Detective Clidell Conston. Dabney, who had been interrogated on two prior occasions, was given his *Miranda*[1] warnings by Conston and asked to identify the shirt. Dabney stated that he understood what his rights were and agreed to discuss the shirt with Conston. Conston stated that Dabney identified the shirt as the one he was wearing on the day of the incident. As noted previously, the State did not introduce this evidence during its case, but the shirt was introduced by co-defendant Phalo during its case.

During a suppression hearing Dabney objected to the introduction of the shirt and also to the voluntariness of the two prior statements given to the police. The two statements were not

introduced during the trial. Evidence was presented during the suppression hearing which showed that Dabney was mildly retarded. The evidence presented by Dabney was that he read at either a second or third grade level, he had an IQ of 52, he learned on a kindergarten level, and he would not be able to understand the standard rights waiver he signed, and the content of the warning.

Testimony was presented for the State during the suppression hearing by Detective Ned Garner, Detective Joe Wade and Detective Clidell Conston, who were all present when Dabney made his first statement. Each detective testified that Dabney agreed to talk with them. Dabney was given a copy of the *Miranda* warnings. Dabney read the first two lines of the *Miranda* warning aloud with no difficulty. The rest of the warning was then read to Dabney while he read along silently. Dabney's oral statement was reduced to writing, reviewed by Dabney, and then signed. Dabney gave his second statement to Detective Orlando Luallen, Jr. five days after his first statement. Dabney was advised of his rights, and he freely agreed to talk with Detective Luallen and his partner, Detective Paige. The statement was reviewed with Dabney and later signed by him. The trial court found the testimony of the police officers to be more credible than that of Dabney's witnesses and ruled his statements to be admissible.

The Mississippi Supreme Court has held that the circuit court sits as a fact finder when determining the voluntariness of a confession, and that court's determination will not be reversed unless manifestly wrong. *Blue v. State*, 674 So. 2d 1184,1204 (Miss. 1996) (citing *Porter v. State*, 616 So. 2d 899, 907 (Miss. 1993)). "The State has the burden of proving all facts prerequisite to the admissibility of a defendant's confession beyond a reasonable doubt." *Blue*, 674 So. 2d at 1204 (citations omitted). There is no per se rule that mental retardation renders a confession involuntary and inadmissible. *Blue*, 674 So.2d at 1205 (citing *Neal v. State*, 451 So. 2d 743, 756 (Miss. 1984)). The Supreme Court has stated that the mental abilities of an accused are but one factor to consider among all the facts and circumstances when determining whether a confession was intelligently and voluntarily made. *Neal*, 451 So. 2d at 756. "[T]he trial judge must first determine whether the accused, prior to the confession, understood (a) the content and substance of the *Miranda* warnings and (b) the nature of the charges of which he was accused or with respect to which he was under investigation." *Id.* at 755. The trial judge's determinations will not be disturbed on appeal unless they are clearly erroneous. *Id.* at 756.

In the case at hand, there is testimony in the record showing that Dabney was aware of his rights and that he fully understood them. There also exists evidence that Dabney knowingly and intelligently waived his rights. Dabney was questioned and given his *Miranda* warnings on two prior occasions before he was questioned about the plaid shirt. Dabney was once again given his *Miranda* warnings, and he told Detective Conston that he understood his rights before admitting to Conston that he was the owner of the plaid shirt worn on the day of the murder. The statement by Dabney to the ownership of the shirt was not a confession *per se* in the sense as we would normally think of a confession, but it was, nonetheless, evidence he gave which was incriminating. This was the third time that Dabney had been questioned and given his *Miranda* warnings. Evidence exists to prove that Dabney had no problem reading the *Miranda* warnings aloud. Also, at Dabney's sentencing hearing, the trial judge stated "I have observed you throughout the trial and I'm convinced by your actions that you fully grasped the situation, regardless of your mental capacity, and that you fully understood what was taking place throughout the entire series of events." For these reasons, the trial judge did not err in allowing the introduction of testimony concerning Dabney's identification of the plaid shirt.

## III.

### DID THE COURT ALLOW DR. RODRIGO GALVEZ TO IMPROPERLY OFFER OPINION TESTIMONY?

Dabney argues that part of the testimony of the pathologist who performed the autopsy on the deceased was outside of the scope of the pathologist's area of expertise. Dabney asserts that the pathologist's opinion was not stated as being within a reasonable degree of medical certainty. The State contends that Dabney did not object at trial, and that Dabney is attempting to use Phalo's objection as an avenue to claim the issue as error for appeal. Also, the State asserts that no objection to the pathologist's expertise or qualifications in the field of pathology was raised at trial by either defendant.

Dr. Rodrigo Galvez was the pathologist who performed the autopsy on the deceased, Eddie Wilson, Jr. Dr. Galvez testified that the bullet entered the lower left back of Wilson and traveled through the body and was recovered in the left upper back. He was asked a hypothetical question dealing with Wilson's body position if the gun had been fired from the vehicle. Phalo's attorney objected to this line of questioning, but Dabney's attorney did not. Dr. Galvez answered the question stating that the body would be positioned like an arch, bending over. Previously in his testimony, Dr. Galvez stated "[t]he bullet entered the left lower back, and I recovered the bullet in the left upper back, behind the shoulder blade. Okay. So that--the only way that I can explain that, if the body was bending down, the upper part of the body was bending down, and the bullet entered the body in the left lower side of the back, keeps on going up, and exits behind the left shoulder blade." This statement was not objected to by either defendant.

Dabney's failure to object to Dr. Galvez's testimony during the trial procedurally bars him from assigning the testimony as error. *Davis v. State*, 660 So. 2d 1228, 1256 (Miss. 1995); *Foster v. State*, 639 So. 2d 1263, 1289 (Miss. 1994). We were unable to find an agreement in the record between the co-defendants stipulating that each would agree to the other's objections. Phalo objected to Dr. Galvez's testimony, not Dabney.

Assuming no procedural bar, this issue has no merit. Dr. Galvez was asked to answer a hypothetical question dealing with the positioning of the body at the time Wilson was shot. Dr. Galvez had previously testified without objection that the only way the bullet could enter the lower back of Wilson and be recovered in the upper left shoulder was if "the upper part of the body was bending down." His answer to the hypothetical question as to the positioning of the body at the time the gun was fired had, therefore, already been put into evidence by his prior testimony. Neither defendant objected to this prior testimony. Further, Dr. Galvez was more than qualified to answer the hypothetical question having either performed, supervised, or observed over 4,000 autopsies during his thirty year medical career.

## IV.

### DID THE COURT ERR IN GRANTING THE STATE'S MOTION IN LIMINE REGARDING

TESTIMONY ABOUT DABNEY'S LEARNING DISABILITIES AND MILD RETARDATION?

Dabney argues the trial court erred when it refused to allow expert testimony on the issue of the voluntariness of Dabney's confessions due to his mild retardation. Dabney asserts that the introduction of the plaid shirt into evidence was, in essence, an incriminating admission on his part as to his guilt. Dabney contends that the jury should have heard about his disabilities and whether he would have been able to understand his rights against self-incrimination. The State contends that the trial court was correct in finding evidence of Dabney's alleged mental disability irrelevant to the case.

Dabney asserts that evidence tending to prove that his statements to the officers were not voluntary should have been admitted to the jury. Dabney relies on language from *Cole v. State*, 525 So. 2d 365 (Miss. 1987) to argue his point. The language on which Dabney relies is "once a confession has been admitted, 'either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession.'" *Cole*, 525 So. 2d at 368 (quoting *Rhone v. State*, 254 So. 2d 750, 754 (Miss. 1971)). However, the *Cole* court found this argument to be without merit because the issue of voluntariness was presented before the jury during questioning by the defense attorney. *Cole*, 525 So. 2d at 368. *Cole* is similar to the case at hand. In this case, Detective Conston was asked on cross-examination in the presence of the jury: (1) the age of Dabney, (2) whether Dabney's parents were present during the questioning, (3) whether Dabney's lawyer was present during questioning and (4) whether Conston had knowledge that Dabney was a special education student at the time of the interview. Further, two of Dabney's special education teachers testified for Dabney during his case-in-chief. The teachers told the jury that they were special education teachers and that they taught Dabney. From this testimony, the jury could conclude for themselves that Dabney had a learning disability. We conclude that the issue of Dabney's mild retardation and learning disabilities was presented to the jury. The voluntariness of the confessions had also been presented to the jury, and therefore, this issue is without merit.

V.

WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-7?

At the close of evidence, Dabney requested the following instruction:

The Court instructs the jury that if you believe from the evidence that the alleged confession of the defendant was untrue you should disregard it or, if you believe from the evidence that it was made under the influence of hope or fear, you may take this into account in determining what weight or credit, if any, you may attach to it as evidence.

The instruction was denied by the trial judge. Dabney argues that there was evidence presented to the jury that the police officers obtained incriminating information and statements from Dabney. Dabney asserts this instruction would have instructed the jury as to how they were to evaluate this incriminating evidence. The State contends that the evidence of the introduction of the plaid shirt did not amount to a confession.

Evidence was presented which proved that Dabney knowingly and intelligently waived his rights before he spoke with the police on each of the three occasions in which he was questioned. Further, the situation at hand is similar to that in *Johnson v. State*, 196 Miss. 402, 409, 17 So. 2d 446, 448 (1944), as there was no evidence to show that Dabney's statement as to the ownership of the shirt was obtained in the manner as suggested by the instruction. Therefore, the trial judge did not err in refusing the instruction.

VI.

WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-6 REGARDING DABNEY NOT TESTIFYING?

Dabney did not testify on his own behalf and offered the following instruction:

The Court instructs the Jury that the law does not compel the defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be drawn from the failure of the defendant to testify.

The instruction was refused due to the objection of co-defendant Phalo. Phalo contended that if the instruction was given, it would be a direct comment on his failure to testify.

The United States Supreme Court has stated that the Fifth Amendment requires a trial judge to instruct the jury that no adverse inference can be drawn from a defendant's failure to testify in his behalf after a proper request has been made. *Carter v. Kentucky*, 450 U.S. 288, 300 (1981). Our supreme court has also found error in a trial judge's refusal to give an instruction on the defendant's failure to testify when the instruction is requested. *See Watson v. State*, 521 So. 2d 1290 (Miss. 1988); *Ragan v. State*, 318 So. 2d 879 (Miss. 1975); *Wood v. State*, 221 Miss. 901, 74 So. 2d 851 (1954); *Funches v. State*, 125 Miss. 140, 87 So. 487 (1921). However, none of these cases have dealt with the situation as is present here. Here, Dabney asserts that the refusal to grant the instruction was a violation on his rights; whereas, at trial, Phalo contended that the granting of the instruction would violate his rights. This placed the trial judge in a "Catch-22" situation. Either way the trial judge ruled on this matter, one defendant would object and bring the matter on appeal. As is, Phalo objected and Dabney now brings this issue on appeal.

In *Watson v. State*, 521 So. 2d 1290 (Miss. 1988), the supreme court was faced with a similar situation as the one at hand. In *Watson*, the defendant did not testify and proposed an instruction to the effect that by not testifying, this could not be considered as evidence against him. *Id.* at 1295. The trial court did not grant the instruction. *Id.* The supreme court did not reverse the trial court stating that the proposed instruction had been substantially covered by the court's own instruction. *Id.* The court's instruction stated:

The Court instructs the jury that the defendants at the outset of this trial are presumed to be innocent.

They are not required to prove themselves innocent, or to put [on] any evidence at all upon the subject. In considering the testimony in the case, you must look at the testimony and view it in the light of that presumption which the law clothes the defendants with, that they are innocent; and it is a presumption that abides with them throughout the trial of the case until the evidence convinces each and every one of you to the contrary beyond a reasonable doubt of guilt.

*Id.*

The supreme court concluded that when all the instructions were read and considered together, the jury was adequately and properly instructed. *Id.* at 1295-96.

The court's instruction in *Watson* was similar to an instruction in this case. In the case at bar, the court gave the following instruction:

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving a Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that a defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

We conclude that when reading all the instructions together, the jury was fully and fairly instructed, and the failure to give the proposed instruction was not an error. *Watson*, 521 So. 2d at 1295-96; *Laney v. State*, 486 So. 2d 1242, 1246 (Miss. 1986).

However, assuming for the sake of argument that the failure to grant the proposed instruction was error, we would hold the same harmless. As the Fifth Circuit stated in *Richardson v. Lucas*, 741 F.2d 753, 755 (5th Cir 1984), the refusal to give a requested instruction dealing with the defendant's failure to testify can be harmless error. In determining whether or not an error is harmless, "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). The court must then "decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir. 1980) (citing *Brown v. U.S.*, 411 U.S. 223, 230-32 (1973)).

The evidence presented at trial showed that Dabney, Phalo, and two others stole Eddie Wilson's Blazer from the Electric City parking lot. Wilson and Tye Carney then followed the Blazer to the intersection of Northside and State Streets. Wilson exited the Blazer and ran over to the Blazer in an attempt to recover his stolen vehicle. At this time, Carney recalled that shots were fired from the Blazer. Curtis Rhone, Jewell Davis, Clara Davis, and Arthur Davis each testified that Dabney fired at Wilson as Dabney exited the Blazer. Clara Davis stated that she saw the person wearing plaid clothes running away from the crime scene with a gun. Dabney admitted to police that he was wearing a plaid shirt on the day of the shooting. The evidence is overwhelming and uncontradicted.

VII.

WHETHER THE COURT ERRED IN REFUSING JURY INSTRUCTION DD-3 REGARDING REASONABLE DOUBT?

Dabney proposed the following instruction on reasonable doubt:

The Court instructs the Jury that the term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence, or the lack of evidence.

The supreme court has stated that reasonable doubt defines itself and needs no further definition from the trial court. *Chase v. State*, 645 So. 2d 829, 856 (Miss. 1994); *Williamson v. State*, 589 So. 2d 1278, 1280 (Miss. 1991); *Allman v. State*, 571 So. 2d 244, 252 (Miss. 1990). The trial court did not err by refusing the proposed instruction.

**PHALO**

I.

THE COURT ERRED IN NOT ALLOWING APPELLANT TO PUT ON TESTIMONY CONCERNING AN OUT-OF-COURT STATEMENT MADE BY CO-DEFENDANT MOSES DABNEY. THE COURT HAD PREVIOUSLY RULED THIS STATEMENT TO BE ADMISSIBLE; THE STATEMENT WAS EXCULPATORY ON BEHALF OF THE APPELLANT; AND THE STATEMENT SHOULD HAVE BEEN ADMITTED AS A STATEMENT AGAINST THE PENAL INTEREST OF CO-DEFENDANT DABNEY.

Phalo argues that the trial court erred by not allowing Phalo to introduce a statement made by Dabney that was exculpatory of Phalo. Phalo asserts that Dabney was unavailable as a witness to testify, that the statement was exculpatory of Phalo, and that the statement was against the penal interest of Dabney. Therefore, Phalo contends that the statement was admissible under Mississippi Rule of Evidence 804(b)(3). The State argues that Dabney's statements, taken as a whole and in context, were not exculpatory to Phalo. The State contends that allowing the jury to hear and see only the minor portion of Dabney's statement which could have been considered exculpatory toward Phalo would have misled the jury and given them a totally false picture of the events of the crime.

Prior to trial, Dabney's attorney filed a motion to suppress a statement made by Dabney to the police after his arrest on January 5 and a second statement made on January 10. In the first of these statements, Dabney told police that when Eddie Wilson, Jr. ran up to the Blazer, that Phalo yelled, "Shoot that nigger, shoot that nigger." Dabney then told police that he shot at Wilson twice, then the gun jammed. Dabney stated that he pulled the gun back and then it started shooting again. Dabney then stated that he dropped the gun by a fence as he was running away. Dabney also told police during his first statement where he bought the gun and where he got the bullets. In Dabney's second

statement, Dabney told police that he fired the gun in the air twice, and then Phalo took the gun and started shooting at Wilson.

The trial court, after a hearing, held both of these statements to be admissible, but as noted earlier, the State did not introduce either of Dabney's statements during its case-in-chief. Neither Dabney nor Phalo testified at trial. Phalo's attorney sought to introduce a portion of Dabney's January 5 statement where Dabney admitted shooting at Wilson. Phalo's attorney only wanted to introduce the portion of Dabney's first statement that exculpated Phalo. Phalo's attorney made a proffer in the record indicating such. After hearing argument on the matter, the trial court ruled that Phalo could not introduce any part of Dabney's statements.

Phalo asserts that Dabney's statement constituted a statement against Dabney's penal interest and the trial court should have permitted Phalo to introduce Dabney's statement through the testimony of the police detective who took Dabney's statement. Phalo contends the statement is admissible under Mississippi Rule of Evidence 804(b)(3), which states:

Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In order to determine the admissibility of a statement under Rule 804(b)(3), courts usually apply a three part test:

The declarant's testimony must be unavailable; the statement must so far tend to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true;" and the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.

*United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). *See also United States v. Lopez*, 777 F.2d 543, 554 (10th Cir. 1985); *United States v. Brainard*, 690 F.2d 1117, 1123-25 (4th Cir. 1982).

Clearly, Dabney meets the first two prongs of this test because he was unavailable as a witness because of his Fifth Amendment privilege against self-incrimination, and his statement subjected him to criminal liability. Dabney gave two statements to the police: one in which he implicated himself as the shooter, and in the other, he implicated Phalo in the murder. Phalo sought to introduce only the part of Dabney's statements where Dabney inculpated himself in the crime. The question remains whether or not the statement was trustworthy.

In the case of *Brown v. State*, 99 Miss. 719, 55 So. 961 (1911), the court announced the rule regarding the inadmissibility of declarations against penal interest where the declarant is not available as a witness. The *Brown* court stated that the admissions of a third person, made out of court, in

which the third person disclosed his guilt of the crime charged and exculpated the accused, are inadmissible as hearsay. *Brown*, 99 Miss. at 726-8, 55 So. at 961-2. The situation announced in *Brown* was revisited in *Thompson v. State*, 309 So. 2d 533 (Miss. 1975). The *Thompson* court looked to the rule announced in *Brown* and reaffirmed its position stating, "where the declarant is not available his out-of-court declarations against penal interest are not sufficiently trustworthy to justify the Court in making an exception to the hearsay rule." *Thompson*, 309 So. 2d at 535. *See also Gullett v. State*, 523 So. 2d 296, 300 (Miss. 1988). Dabney's statement to the police exculpating Phalo when attempted to be introduced by Phalo was inadmissible. The trial court did not err in ruling that Phalo could not use Dabney's statements.

## II.

THE COURT ERRED IN OVERRULING THE DEFENDANT'S OBJECTION TO QUESTIONS ASKED BY THE STATE OF THE STATE WITNESS CURTIS RHONE CONCERNING WHETHER THE DEFENDANT EVER OWNED A GUN IN HIS LIFE OR EVER CARRIED A GUN IN HIS LIFE. THE QUESTIONS AND ANSWERS WERE IRRELEVANT, PREJUDICIAL AND HIGHLY SPECULATIVE IN VIOLATION OF THE MISSISSIPPI RULES OF EVIDENCE. ADDITIONALLY THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION FOR MISTRIAL BASED ON THE ADMISSION OF SAID EVIDENCE.

Curtis Rhone testified for the State and stated that he saw a .380 caliber gun on a table at Phalo's house shortly after the murder. Rhone was asked on cross-examination by Dabney's attorney, "You didn't see Jason run out with a gun?" Rhone answered, "No." He was then asked by Phalo's attorney on cross-examination, "Before Jason Phalo got out of the car, the Honda, to go get the Blazer, did Jason Phalo have a gun that you knew of?" He answered, "No." He was then asked, "Was he carrying a gun that you knew of?" He answered, "No." During the redirect examination of Rhone, he was asked, "Curtis, does Jason Phalo have a gun?" He answered, "Yes." "Is it a revolver or a semi-automatic?" Rhone answered that Phalo's gun is a semi-automatic. Phalo's attorney objected to the line of questioning and moved for a mistrial. The court overruled the objection.

Phalo contends that the State should not have been allowed to elicit testimony that at some time Phalo owned and carried a gun. Phalo argues the testimony was irrelevant, prejudicial and speculative as well as evidence of other wrongful acts offered to prove that Phalo acted in conformity therewith. Phalo contends that the line of questioning was impermissible because it is evidence of other crimes under Rule 404(b) of the Mississippi Rules of Evidence. Rule 404(b) reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The State counters and argues that the evidence of Phalo's possession of a gun was admissible under Rule 401 of the Mississippi Rules of Evidence. Rule 401 states:

"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence.

The State contends that the question was whether Phalo fired a gun at Wilson, and the evidence that Phalo had a gun in his possession was relevant to the determination of that question. The State asserts that Phalo's attorney "opened the door" to the questions asked of Rhone on redirect.

"The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination." *Blue v. State*, 674 So. 2d 1184, 1212 (Miss. 1996) (citing *Evans v. State*, 499 So. 2d 781 (Miss. 1986)). Also, we will not disturb a trial court's ruling on matters pertaining to redirect unless there has been a clear abuse of discretion. *Blue*, 674 So. 2d at 1212.

The Mississippi Supreme Court has held that "once the defense opens the door to otherwise improper testimony, the prosecution is permitted to enter and develop the matter in greater detail." *Fleming v. State*, 604 So. 2d 280, 291 (Miss. 1992). *See also Jefferson v. State*, 386 So. 2d 200, 202 (Miss. 1980). "If a defendant opens the door to line of testimony, ordinarily he may not complain about the prosecutor's decision to accept the benevolent invitation to cross the threshold." *Doby v. State*, 557 So. 2d 533, 539 (Miss. 1990).

The questions asked Rhone on redirect examination were not evidence of other crimes or wrongs committed by Phalo. Eyewitness testimony placed Phalo at the scene of the murder, firing a gun at Wilson. Rhone testified that he saw a gun on a table at Phalo's house on the night of the murder. Rhone then testified that Phalo does own a gun. Rhone's testimony and this line of questioning asked on redirect do not amount to evidence proving other crimes or wrongs committed by Phalo. Furthermore, even if we were to hold that the questions were impermissible, we hold that Phalo's attorney "opened the door" to the line of questioning during the cross-examination of Rhone.

III.

THE COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO AND IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL MADE WHEN THE STATE IN CLOSING DIRECTLY COMMENTED ON THE APPELLANT'S FAILURE TO TESTIFY AT TRIAL.

Phalo chose not to testify in his defense at trial. During the District Attorney's closing argument, he asked the jury, "What evidence is there in this record or anywhere, that anyone other than Jason Phalo owned a weapon?" Phalo contends that this was a direct comment on his failure to testify. The State asserts that Phalo's attorney did not make a proper objection at trial, and that the defense "opened the door" to the comment during its closing argument.

"The prosecution is prohibited from making a direct comment, or reference by innuendo or insinuation to a defendant's failure to testify on his own behalf." *Taylor v. State*, 672 So. 2d 1246, 1266 (Miss. 1996). *See also Ladner v. State*, 584 So. 2d 743 (Miss. 1991). Whether there is error must be determined from the facts and circumstances of the case. *Ladner*, 584 So. 2d at 754. Counsel

is limited in his argument to facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991); *Monk v. State,* 532 So. 2d 592, 601 (Miss. 1988); *Davis v. State*, 530 So. 2d 694, 701-2 (Miss. 1988). However, parties are given great latitude in making their closing arguments. *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989); *Monk*, 532 So. 2d at 601.

The State argues that Phalo is procedurally barred from raising this issue on appeal because Phalo's counsel did not give a specific ground for the objection and the trial court did not properly rule on the objection. We agree with the State. When Phalo's counsel objected to the prosecutor's statement during closing, he stated, "We're going to object to that, just to make our record and motion again as to the argument of the State, Your Honor." The trial judge answered, "All right," to the objection, and did not make a ruling on the objection. The supreme court in *Gayten v. State*, 595 So. 2d 409 (Miss. 1992), was faced with a similar situation. In *Gayten*, the defense counsel objected to improper comments made by the prosecution during its closing argument. *Id.* at 413. After the defense objected, the trial court stated, "All right. Go ahead." *Id.* The supreme court found that Gayten failed to seek a definitive ruling on the objection, and that by doing so, Gayten waived his objection. *Id.* In the case at hand, Phalo's counsel failed to seek a definitive ruling from the trial judge, and therefore, Phalo waived any objection to the improper comment made by the prosecution.

Without waiving the procedural bar, we find that Phalo's assertion has no merit. The prosecutor's comment was not a comment on Phalo's failure to testify, but it was a legitimate response to the closing argument of Phalo's counsel. Phalo's attorney stated during closing argument:

And has anybody testified that Jason Phalo knew, or even that he should have known, that when Moses Dabney jumped out of that car and got into the Blazer that Moses Dabney had a gun? Has anybody said anything about that? No, they haven't.

We hold that the statements by Phalo's counsel "opened the door" to the comments made by the prosecution, and taken in context, were not a comment on Phalo's failure to testify. *Doby*, 557 So. 2d at 539. This issue has no merit.

IV.

THE STATE ENGAGED IN REVERSIBLE PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT WHEN IT MADE FALSE AND MISLEADING STATEMENTS OF FACTS WITHIN ITS OWN KNOWLEDGE, THEREBY DENYING THE APPELLANT HIS CONSTITUTIONAL RIGHT TO FAIR TRIAL.

Phalo argues that the prosecutor, during the State's closing argument, made false and misleading comments to the jury concerning the .380 handgun used to kill Eddie Wilson, Jr. Phalo asserts that the prosecutor was aware that Dabney made two statements to the police, one in which Dabney exonerated Phalo and one in which Dabney indicated Phalo as the shooter. Therefore, Phalo contends that the State possessed the evidence needed to disprove its own argument to the jury concerning Phalo's connection to the handgun. The State counters and argues that Phalo did not make a proper objection and that he did not ask for a more definitive ruling from the trial judge. Also, the State

propounds that the prosecutor's comments did not rise to the point of reversible error.

During closing, the prosecutor stated that Phalo owned the handgun and that he brought it to the scene of the murder. The prosecutor also stated, "What evidence is there in this record or anywhere, that anybody other than Jason Phalo owned a weapon?" (See Phalo's third assignment of error). The State further argued, "Who owns--the only person in evidence who had a gun like that, and what gun killed the [victim]?" Finally the State argued that Curtis Rhone saw Phalo carrying a weapon. Phalo asserts that these comments were erroneously argued before the jury because the State and trial court knew that the statements were false.

Counsel is limited in his argument to facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991); *Monk v. State,* 532 So. 2d 592, 601 (Miss. 1988); *Davis v. State*, 530 So. 2d 694, 701-2 (Miss. 1988). However, parties are given great latitude in making their closing arguments. *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989); *Monk*, 532 So. 2d at 601. "Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Ballenger v. State*, 667 So. 2d 1242, 1270 (Miss. 1995).

The only comment to which Phalo objected was, "What evidence is there in this record or anywhere, that anybody other than Jason Phalo owned a weapon?" As discussed in Phalo's third assignment of error, he is procedurally barred from raising this statement as error on appeal because he failed to seek a definitive ruling from the trial judge on his objection. Phalo did not object to any of the other comments he now raises on appeal, and therefore, he is procedurally barred from assigning these statements as error. "[A] *contemporaneous* objection to the allegedly prejudicial remarks is required." *Williams v. State*, 684 So. 2d 1179, 1203 (Miss. 1996) (quoting *Handley v. State*, 574 So. 2d 671 (Miss. 1990)) (emphasis in original). When Phalo failed to object at trial, he waived his right to assign the comments as error, and the points waived are deemed forfeited on appeal. *Williams*, 684 So. 2d at 1203.

Without waiving the procedural bar, we find this assignment of error has no merit. The facts in evidence show that Phalo was identified by State witness Mamie Hardges as the person whom she saw shoot at Wilson. Hardges positively identified Phalo from a photo lineup. Also, Curtis Rhone testified that he saw a .380 handgun on a table at Phalo's house on the night of the murder The record also indicates that Phalo, himself, took the police to the location where the gun was recovered. Given the context in which the prosecutor's statements were made, taken with the supporting evidence in the record, the statements did not amount to error. *Wiley v. State*, 691 So. 2d 959, 965 (Miss. 1997).

V.

THE COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT IT COULD CONSIDER WHETHER THE APPELLANT WAS GUILTY OF THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER BECAUSE THERE WAS A SUFFICIENT EVIDENTIARY AND LEGAL BASIS FOR THE INSTRUCTION.

At the close of the evidence, Phalo proposed instructions D-3 and D-7 which would have allowed the

jury the option of finding him guilty of manslaughter. The trial court found that this case did not warrant the requested lesser-included instruction on manslaughter. Phalo argues that the trial court erred by not granting the lesser-included instructions.

"A lesser-included offense instruction is required 'where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt.'" *Thorson v. State*, 653 So. 2d 876, 893 (Miss. 1994) (quoting *Mackabee v. State*, 575 So. 2d 16, 23 (Miss. 1990)). Where Phalo has requested that the jury be instructed on a lesser charge, this Court will look at the evidence in the light most favorable to Phalo in determining whether such an instruction is warranted. *Davis v. State*, 684 So. 2d 643, 656 (Miss. 1996). A lesser-included offense instruction is proper only if the record supports finding an evidentiary basis for the instruction. *Davis*, 684 So. 2d at 657; *Ormond v. State*, 599 So. 2d 951, 959 (Miss. 1992); *Mease v. State*, 539 So. 2d 1324, 1330 (Miss. 1989).

In order to determine whether the lesser-included instruction should have been granted, it is necessary to review the elements of murder and manslaughter. The elements of murder as charged in the indictment are: (1) the killing of a human being (2) without the authority of law (3) when done with deliberate design to effect the death of the person killed. Miss. Code Ann. § 97-3-19(1)(a) (1972). The elements of manslaughter are: (1) the killing of a human being (2) without malice, by the act, procurement, or culpable negligence of another (3) while such other is engaged in the perpetration of any felony, except rape, burglary, arson or robbery, (4) or while such other is attempting to commit any felony besides such as are above enumerated and excepted. Miss. Code Ann. § 97-3-27 (1972).[2]

The evidence presented at trial satisfies the elements of (1) the killing of a human being (2) without the authority of law (3) when done with deliberate design to effect the death of the person killed. There were many witnesses that testified at trial. Four witnesses testified that they saw Dabney firing at Wilson and did not see Phalo shoot, but Clara Davis and Jewell Davis testified that the taller of the two men, which was Phalo, had a gun in his hand when he was running from the scene. Mamie Hardges stated that she concentrated on the driver of the Blazer (Phalo) and saw him with a gun while he was still inside the Blazer. She saw him get out of the Blazer with a gun and she saw him fire the gun at Wilson. Hardges was about five or six feet away from Phalo after Phalo exited the Blazer. Evidence was presented at trial that there were two guns in Wilson's stolen Blazer and that both defendants were shooting. Based on the record before us, the evidence only supports murder, not manslaughter. Also, if Phalo had argued or professed an accidental shooting, then he might be entitled to a lesser instruction on manslaughter. But Phalo argued that he did not shoot at Wilson, and therefore, the instruction was not required to be given because Phalo's theory of defense would not support the granting of the manslaughter instruction. The trial judge did not err by refusing to grant the proposed instructions on manslaughter.

VI.

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT IT MIGHT CONSIDER WHETHER THE APPELLANT WAS GUILTY OF THE CRIME OF ACCESSORY AFTER THE FACT TO MURDER, THEREBY DENYING THE APPELLANT A FAIR TRIAL.

At the close of evidence, Phalo proposed instructions D-4 and D-7 on accessory after the fact. The

trial judge denied the proposed instructions. Phalo argues that the trial court erred by refusing to grant the proposed instructions because the instructions would allow the jury to consider whether Phalo was guilty of the crime of accessory after the fact to murder. The State contends that there is nothing in the evidence presented to show that Phalo aided or assisted Moses Dabney in escaping from the crime or that the crime was not committed by both defendants.

Phalo bases his argument on *Gangl v. State*, 539 So. 2d 132 (Miss. 1989). In *Gangl* the trial court refused to grant an accessory after the fact instruction because accessory after the fact was not a lesser-included offense to the indicted charge of armed robbery. *Gangl*, 539 So. 2d at 135. No evidence presented at Gangl's trial, either direct or circumstantial, implicated Gangl as a participant in the armed robbery. *Id.* Gangl was tried and convicted circumstantially on the theory that he was an accessory before the fact to the armed robbery. *Id.* The Mississippi Supreme Court reversed and remanded Gangl's conviction stating that, "[h]ad the instruction been granted, a serious doubt may have arisen in the minds of the jurors as to whether Gangl's apparent assistance to at least one of the perpetrators was the product of pre-design, or was simply the product of after the fact circumstance." *Id.* at 136. The court went on to hold that where the evidence warrants a lesser-included offense instruction, the accused is entitled as a matter of right to the instruction. *Id.*

"[T]he crime of accessory after the fact is an entirely separate and distinct offense and not a constituent part of an offense so as to be a lesser included offense." *Wilcher v. State*, 455 So. 2d 727, 734 (Miss. 1984). *See also Johnson v. State*, 477 So. 2d 196 (Miss. 1985). "[A]ccessory after the fact is a distinct crime for which a person cannot be punished unless indicted." *Wilcher*, 455 So. 2d at 734 (citation omitted). Lesser offense instructions such as accessory after the fact should be granted only where there is an evidentiary basis in the record for such an instruction. *Gangl*, 539 So. 2d at 136.

In the case *sub judice* there was no evidentiary basis for the granting of the proposed instructions. There was no evidence presented to show that Phalo only aided or assisted Dabney in escaping from the crime scene. The lack of evidence of aiding and abetting, and also the evidence of Phalo's involvement in the murder, distinguishes this case from *Gangl*. Therefore, the trial court did not err by refusing to grant Phalo's proposed instructions on accessory after the fact to murder.

**THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF MOSES DABNEY, III OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF JASON PHALO OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF BOTH APPEALS ARE ASSESSED TO HINDS COUNTY.**


**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR. PAYNE, J., NOT PARTICIPATING.**


1. Referring to the *Miranda* rights enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966).

2. §97-3-27 has since been amended to except the crimes of kidnaping, sexual battery, unnatural intercourse with any child under the age of twelve, or nonconsensual unnatural intercourse with mankind. However, these have no application to the present case.