**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-10506

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

RONALD ANTHONY BEASLEY, II,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00024-CEM-EJK-1

————————————

Before WILLIAM PRYOR, Chief Judge, and BRANCH and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a pharmacist convicted of health-care fraud is entitled to a new trial based on newly

discovered evidence, and whether the district court erred in some of its evidentiary rulings. A grand jury charged Ronald Beasley for defrauding Medicare by billing for different drugs than he dispensed and for prescriptions he never filled. He was convicted of one count of conspiracy to commit health-care fraud and three counts of health-care fraud. *See* 18 U.S.C. §§ 2, 1347, 1349. Beasley contends that the district court erred by not granting his motion for a new trial; by admitting evidence that he committed an uncharged theft; and by not holding an *in-camera* hearing to determine whether a witness properly invoked her Fifth Amendment right against self-incrimination, and he argues that the government violated his right to present a complete defense by not offering the witness immunity. We affirm.

## I.    BACKGROUND

On February 23, 2022, a grand jury indicted Ronald Beasley on one count of conspiracy to commit health-care fraud and three counts of health-care fraud. *See id*. The indictment alleged that Beasley, as "pharmacist-in-charge" of a Florida pharmacy called NH Pharma, defrauded Medicare by seeking "reimbursement for compound and other prescription medications . . . that NH Pharma did not have the inventory to fill." Beasley pleaded not guilty. The pharmacy's owner, Nava Hajiabadi, pleaded guilty to conspiracy to commit health-care fraud and agreed to cooperate with the government.

Before trial, Beasley moved to exclude evidence that he stole about $200,000 in cash from the pharmacy, an uncharged theft.

The district court denied that motion. It ruled that the uncharged theft was admissible as intrinsic evidence.

Beasley also sought to question Hajiabadi's mother, Mehrshid Khatami, at trial. Khatami was a part-owner of the pharmacy, worked there as a pharmacy technician, and helped manage its bank account. Khatami stated that she would invoke her Fifth Amendment privilege against self-incrimination, so the district court granted a hearing at Beasley's request to evaluate Khatami's invocation of that privilege.

At the hearing, Beasley's counsel outlined the questions he would ask Khatami, and Khatami's counsel responded that Khatami "ha[d] a Fifth Amendment right to remain silent in response to every single one of those questions or topics." Khatami's counsel alternatively suggested that the prosecution could provide his client immunity. The prosecution responded that immunity for witnesses is "rare," determined "at a higher level within the Department of Justice," and not "warranted" "in this circumstance." The district court acknowledged the prosecution's position and explained that it was "not going to recommend [immunity] or lobby for it." The district court ruled that Khatami had substantiated her invocation of the Fifth Amendment privilege and that *in-camera* questioning was unnecessary. So the district court excused Khatami from testifying at trial.

At trial, Hajiabadi testified against Beasley. She explained that a significant portion of the pharmacy's business involved compounded creams, which the pharmacy made in-house. The

pharmacy billed Medicare for compounded medicines based on the ingredients it used to make them. But not all ingredients are reimbursable, and whether an ingredient is reimbursable may depend on its form. For example, an ingredient in a powder form—called a bulk agent—is ordinarily not reimbursable, but the same ingredient in a capsule, tablet, or gel form may be reimbursable. Hajiabadi testified that she and Beasley fraudulently inflated the pharmacy's profits by preparing compounds using unreimbursable bulk agents and billing Medicare for more expensive, reimbursable forms of the relevant ingredients.

Hajiabadi also testified about how she and Beasley concealed their scheme. She explained that Medicare and insurance companies conduct audits in which they compare a pharmacy's orders and inventory against the quantity of drugs the pharmacy claims to have dispensed. Because she and Beasley billed Medicare for ingredients they had not used or ordered, the pharmacy faced "shortages" of those ingredients. They addressed that problem by purchasing certain drugs to ensure that they were "on the shelves" when auditors inspected the pharmacy, and then returned the drugs after an audit concluded.

Hajiabadi testified that Beasley stole about $200,000 in cash from the pharmacy. She said that Beasley did not deny the theft but instead stated that "he felt undervalued and underappreciated, based on the money that was being made by the pharmacy." After Hajiabadi and a private investigator confronted Beasley about the theft, he repaid more than $60,000. In addition to Hajiabadi's

testimony about the theft, the prosecution introduced a video showing Beasley accept money from a cash transaction and not put it in the register, bank records of large cash deposits in addition to Beasley's salary, and testimony from the private investigator.

Three Medicare beneficiaries in whose name Beasley billed prescriptions also testified. They testified that they never received—nor even believe they were prescribed—several of the prescriptions Beasley purported to have dispensed to them.

Finally, the prosecution offered testimony from Martin Calabrese, a Medicare expert. Calabrese testified that he conducted an audit of the pharmacy and concluded it had billed Medicare for drugs it could not have dispensed. He also opined that the quantity and duration of prescription of the drugs Beasley purported to dispense to the three Medicare beneficiaries was unusual, and that one of the drugs was "carcinogenic."

In closing, Beasley argued that he lacked knowledge of the conspiracy and a motive to participate in it because, as a salaried employee, he would not directly benefit from fraudulently inflating the pharmacy's profits. He contended that "[p]eople don't enter into agreements to [commit fraud] if there's nothing in return."

The jury found Beasley guilty on all four counts. At sentencing, Beasley denied stealing money from the pharmacy. Instead, he said that he ran a side business selling "collectible merchandise and apparel," which explained his large cash deposits. Beasley further contended that he feared a false accusation of theft would jeopardize his then-pending application to join the Navy, so he "reluctantly

6                      Opinion of the Court                      24-10506

gave [Hajiabadi] all the money [he] had justly earned." The district court did not entirely reject that story and sentenced him to 24 months' imprisonment—a downward variance from the guideline range of 51 to 63 months, which the government had requested.

After Beasley's trial, Hajiabadi filed a sentencing memorandum for her case. She argued that her case "is notable [in] that [it] involves real patients who suffered from *bona fide* medical ailments, and that [she] did dispense compound medications that were appropriate to treat their conditions"—albeit in a manner that "made them ineligible for reimbursement from Medicare." Hajiabadi argued that her "case [was] substantially different than typical healthcare cases where phantom patients are used as a means to submit fraudulent billing." Beasley moved for a new trial on the ground that the arguments in Hajiabadi's sentencing memorandum constituted new evidence. *See* FED. R. CRIM. P. 33(b)(1). The district court denied that motion.

## II.    STANDARDS OF REVIEW

We review several issues for abuse of discretion. We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). We also review the denial of an evidentiary hearing on that motion for abuse of discretion. *United States v. Sweat*, 555 F.3d 1364, 1368 (11th Cir. 2009). We review the admission of evidence about the uncharged theft for abuse of discretion. *United States v. Burnette*, 65 F.4th 591, 605 (11th Cir. 2023). And we review the decision not to question Khatami *in*

*camera* for abuse of discretion. *See United States v. Perez*, 661 F.3d 568, 580 (11th Cir. 2011).

The government argues that we should review the latter issue for plain error because Beasley did not specifically request an *in-camera* hearing or object to the decision not to hold one. We disagree. The district court understood Beasley to have requested *in-camera* review, and it explained its reasoning for not conducting it. Beasley's request for an *in-camera* hearing "was adequately presented to the district court." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006).

We review *de novo* Beasley's constitutional challenge to the refusal to provide Khatami immunity from prosecution. *See United States v. Mitrovic*, 890 F.3d 1217, 1220 (11th Cir. 2018).

### III.    DISCUSSION

We divide our discussion into four parts. First, we explain that the district court did not abuse its discretion by denying Beasley's motion for a new trial and by not holding an evidentiary hearing. Second, we explain that the district court did not abuse its discretion by admitting evidence of the uncharged theft. Third, we explain that the prosecution did not violate Beasley's right to a complete defense by declining to provide Khatami immunity. Finally, we explain that the district court did not abuse its discretion by not conducting *in-camera* questioning of Khatami.

*A. The District Court Did Not Abuse Its Discretion by Denying the Motion for a New Trial Without Holding an Evidentiary Hearing.*

Beasley argues that the district court should have granted him a new trial based on what he describes as newly discovered evidence from Hajiabadi's sentencing memorandum. In that memorandum, Hajiabadi argued that her case was less severe than the "typical healthcare cases where phantom patients are used" to submit fraudulent bills because she provided prescriptions to real patients, even if using unreimbursable ingredients. Beasley contends that with the benefit of Hajiabadi's memorandum, he would not have "inappropriately focused on defending allegations that Beasley was guilty of writing phantom scripts and dispensing inappropriate and dangerous medications."

A district court may grant a motion for "a new trial grounded on newly discovered evidence" "if the interest of justice so requires." FED. R. CRIM. P. 33(a), (b)(1). "Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution." *Campa*, 459 F.3d at 1151 (citation and internal quotation marks omitted). To succeed, Beasley must prove "[1] that the evidence was discovered after trial, [2] the defendant's failure to discover the evidence was not due to a lack of diligence, [3] the evidence is not merely cumulative or impeaching, [4] the evidence is material, and [5] the evidence would probably produce a different result at trial." *United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (citation and internal quotation marks omitted).

We doubt that Hajiabadi's sentencing memorandum counts as "evidence" within the meaning of Rule 33. Evidence "tends to prove or disprove the existence of an alleged fact," *Evidence*, BLACK'S LAW DICTIONARY (12th ed. 2024), and Hajiabadi's memorandum offers only an argument about the facts of her case. As we have explained, "arguments of counsel are not evidence." *United States v. Valois*, 915 F.3d 717, 726 (11th Cir. 2019) (citation and internal quotation marks omitted).

Even if Hajiabadi's memorandum were evidence, the district court did not abuse its discretion by denying Beasley's motion for a new trial. Hajiabadi's sentencing argument should have come as no surprise to Beasley. Hajiabadi's criminal information—unsealed nearly a year before Beasley's trial—alleged that Hajiabadi participated in a conspiracy to fraudulently obtain "reimbursement for compound medications prepared with [unreimbursable] bulk ingredients," but it did not allege that she sought reimbursement for "phantom" prescriptions never filled. Likewise, at Beasley's trial, Hajiabadi testified that that her scheme involved "billing a different ingredient in [her] compounds than what [she was] actually making them with," but that she intended for "the quality of the product" to be "the same . . . [as] the patient expected and what the doctor ordered." If Beasley had any doubt about Hajiabadi's position, he could have asked her during cross-examination. To the extent that Hajiabadi's position was unknown to Beasley until after his trial, it is because of his own "lack of diligence." *See Markovich*, 95 F.4th at 1379.

Beasley argues that Hajiabadi's memorandum "directly contradicted the Government's case against Beasley." We disagree. Hajiabadi's memorandum described *her* legal argument, not Beasley's. That Hajiabadi claimed to not have billed Medicare for "phantom" prescriptions does not speak to whether Beasley did or did not bill Medicare for those prescriptions. Hajiabadi's memorandum also would have been "merely cumulative" because it restates Hajiabadi's testimony from Beasley's trial. *Id.* at 1379. And we agree with the district court that Hajiabadi's memorandum "would not have affected the result of the trial" in the light of the other evidence of Beasley's guilt. The district court did not abuse its discretion by denying the motion for a new trial.

Beasley also argues that the district court erred in not holding an evidentiary hearing on his motion. "The law of this circuit is well established that a motion for new trial may ordinarily be decided upon affidavits without an evidentiary hearing." *Markovich*, 95 F.4th at 1380 (citation and internal quotation marks omitted). Here, the purported new information was undisputed. The district court assumed it was "true" and "interpreted [it] the way [Beasley was] interpreting it." An evidentiary hearing would have served no purpose, and the district court did not abuse its discretion by declining to hold one.

## B. *The District Court Did Not Abuse Its Discretion by Admitting Evidence of the Uncharged Theft.*

Next, Beasley argues that the district court erroneously admitted evidence that he stole cash from the pharmacy under

Federal Rule of Evidence 404(b). But the district court ruled that evidence of the uncharged theft was "not subject to 404(b)," but was instead admissible as intrinsic evidence. Because Beasley "fails to challenge . . . the ground[] on which the district court based its judgment"—that the evidence was admissible as intrinsic—"he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Even if Beasley had properly challenged the admission of the uncharged theft, we would not hold that the district court abused its discretion in admitting that evidence. Evidence is admissible as intrinsic if it is either "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (citation and internal quotation marks omitted). The uncharged theft was necessary to complete the story of the crime. Beasley argued at trial that he received none of the profits from the conspiracy and lacked a motive to participate in it. But evidence that he was skimming cash from the pharmacy explains why Beasley would have had a financial motive to participate in the conspiracy. Indeed, when confronted about the theft, Beasley told Hajiabadi that he felt "undervalued and underappreciated" for his role in the pharmacy's success, which could suggest that he viewed the money he took as his fair share of the conspiracy's profits.

Beasley argues that the district court should not have admitted evidence of the theft because there is insufficient proof that it occurred. But we disagree. When the relevance of evidence is conditioned on the existence of some fact—here, whether Beasley stole from the pharmacy—that evidence is admissible if "the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (discussing FED. R. EVID. 104(b)). There was ample evidence for the jury to have reasonably inferred that Beasley committed the theft: Hajiabadi testified that Beasley stole money; a video showed Beasley taking money from a cash sale and not depositing it in the register; Beasley's bank records showed large cash deposits in addition to his salary; both Hajiabadi and a private investigator testified that Beasley did not deny stealing the money, but instead explained that he felt undercompensated; and Beasley repaid the owner about $60,000. To be sure, Beasley offers an alternate explanation for some of that evidence, and the district court expressed doubt during sentencing about whether the uncharged theft occurred. But a reasonable jury could have found that the theft occurred. The district court did not abuse its discretion in admitting evidence of the uncharged theft.

### C.  *The Government's Refusal to Grant Khatami Immunity Did Not Violate Beasley's Right to Present a Complete Defense.*

Beasley next argues that he suffered a violation of his right to present a complete defense because he was unable to question Khatami. He does not challenge the ruling that Khatami invoked

her privilege against self-incrimination; instead, he challenges the prosecution's refusal to grant Khatami immunity.

"Whether rooted directly in the Due Process Clause . . . , or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted). That right is "not unlimited, but rather is subject to reasonable restrictions" to "accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citations and internal quotation marks omitted). One reasonable restriction is that a defendant may not compel a witness to testify when the witness has properly invoked her Fifth Amendment privilege against self-incrimination. *United States v. Ahmed*, 73 F.4th 1363, 1380 (11th Cir. 2023) ("Generally, we resolve a conflict between a witness's Fifth Amendment privilege and a defendant's Sixth Amendment compulsory process right in favor of the witness."). We agree with the district court that Beasley's right to present a complete defense must yield to Khatami's unchallenged invocation of her Fifth Amendment privilege.

Beasley argues that the district court should have "compelled the government to grant [Khatami] . . . immunity" to resolve the conflict between Beasley's and Khatami's rights. But the power to confer immunity resides "exclusively in the Executive Branch," not in the courts. *United States v. Merrill*, 685 F.3d 1002, 1015 (11th Cir. 2012) (citation and internal quotation marks omitted); 18

U.S.C. § 6003(b)(1). The district court could not exercise a power it does not have.

Beasley alludes to two additional arguments, each unpersuasive. First, Beasley devotes a paragraph to an argument that the government violated his equal protection rights "by selectively prosecuting [him] and not indicting [Khatami]." He asserts that "no showing of discriminatory intent is necessary when the equal protection claim is based on an overtly discriminatory classification." But Beasley fails to say what the allegedly discriminatory classification is. Second, Beasley perfunctorily asserts that the government's refusal to provide Khatami immunity violated his Confrontation Clause rights. That argument is forfeited for insufficient briefing. *Sapuppo*, 739 F.3d at 681. In any event, it fails on the merits. The Confrontation Clause protects against the admission of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Beasley has not pointed to any testimonial hearsay admitted at trial, so the Confrontation Clause is not implicated.

### D.  The District Court Did Not Abuse Its Discretion by Declining to Question Khatami In Camera.

Finally, Beasley argues that the district court erred by not conducting *in-camera* questioning of Khatami. We disagree. The purpose of such a hearing would have been to test Khatami's invocation of the Fifth Amendment. But a district court need not conduct an *in-camera* hearing when the record contains sufficient, uncontested information to resolve the issue. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) (district court has discretion to determine

whether to conduct *in-camera* review based on "the facts and circumstances of the particular case, including, among other things, . . . the likelihood that the evidence produced through *in camera* review" will show that the privilege does not apply). During the pretrial hearing, Beasley's counsel identified the types of questions he would ask Khatami, whose counsel stated that Khatami would "invoke her Fifth Amendment right to essentially every relevant question that [Beasley] has for her." On that record, the district court did not abuse its discretion by determining that proceedings *in camera* were unnecessary.

## IV.    CONCLUSION

We **AFFIRM** Beasley's convictions.